Vant *v.* Gish, Appellant.

Argued June 4, 1963. Before BELL, C. J., MUSMAN-NO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument re-fused November 4, 1963.

*Ella Graubart,* with her *Patterson, Crawford, Arensberg & Dunn,* for appellants.

*Paul Ginsburg,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, October 11, 1963:

In May, 1962, appellee Walter J. Vant instituted an action of trespass in the Court of Common Pleas of Allegheny County against appellants Starling M. Gish, Jr., and Anna R. Gish, residents of Illinois and minor children of his late wife by a prior marriage. Suit was begun pursuant to Pa. R. C. P. 1252 by writ of foreign attachment. The praecipe for the writ stated that appellee's claim was in the amount of $150,000. Assets worth approximately $575,000 were attached in the hands of two Pittsburgh banks, trustees of stocks and bonds allegedly belonging to appellants and in the process of distribution to them. A complaint in trespass was filed shortly thereafter.

The substance of appellee's allegations was that in 1946, he married Evelyn McKaig Gish Vant, mother of appellants; that his wife executed a will in 1947 in which he was named a major beneficiary; that he and his wife moved to California in 1949, but he returned alone to Pennsylvania in 1952; that his wife died in Los Angeles in 1957; that in 1959, he offered her 1947 will for probate in the Superior Court of California, County of Los Angeles; that appellants and their father filed objections to probate of the will; that appellants, their father and their attorneys conspired to defraud appellee of his rights under the will by introducing fraudulent and false testimony in the probate court; that on June 30, 1961, a decree was entered by

the California court denying probate; that as a result of that decree, appellee was deprived of his one-third interest in the estate of his wife and also of the entire estate of his wife's mother which his wife bequeathed to him by exercise of a power of appointment; that the will contest was false, fraudulent and maliciously designed to slander, defame and libel appellee and bring him into public hatred, ridicule and contempt; that the conduct engaged in by appellants in California constituted an abuse of civil process.[1]

---

[1] The following are excerpts from appellee's complaint:

"12. Soon after the death of their mother . . ., the defendants [appellants and their father], in order wrongfully to obtain all of their mother's estate . . . did conspire, combine, confederate and agree together, willfully and maliciously to cheat and defraud the plaintiff of his property and interests in the said estates. Furthermore, they did initiate or obtain the initiation of civil proceedings, which said proceedings were initiated without probable cause, maliciously for the purpose of depriving the plaintiff of his property and the beneficial use of his property in the said estates.

"13. The said civil proceedings were prosecuted in . . . [California], and were filed on defendants' behalf by their father, S. Marshall Gish, Sr. The said civil proceedings were commenced on May 20, 1959 and consisted of Objections to Probate of Will; wherein the said defendants themselves and in combination with their said father, attorneys and agents, did falsely and fraudulently represent that their mother, Evelyn McKaig Vant, at the time of the execution of her said Will on May 2, 1947 lacked testamentary capacity and that the plaintiff herein exercised duress and undue influence upon her, and that their mother's alleged incompetence was partially due to her use of intoxicants and narcotics. The defendants nevertheless completely failed therein to offer a scintilla of evidence from a competent witness in their attempts to support their false and fraudulent representations. The said civil proceedings were knowingly and wholly false, fraudulent and maliciously designed to effect the purpose of the said conspiracy and to slander, defame, libel and bring the plaintiff herein into public hatred, ridicule and contempt. None of the said civil proceedings was true, and the defendants well knew the averments made therein to be false at all times since initiating the same.

To these allegations appellants filed preliminary objections consisting of a demurrer, a question of jurisdiction, a motion to strike off a pleading, an assertion of lack of capacity to sue, and assertions that the assets were exempt from attachment and that no property of appellants was in the hands of the garnishees at the time of service of the writ. Simultaneously with the filing of preliminary objections, appellants petitioned to limit the assets attached and to release part of the property on the ground that the value of the assets greatly exceeded appellee's claim. At the time of argument, appellants presented a written motion to dismiss on the ground that the court lacked jurisdiction under Rule 1252, since the alleged tort occurred in California.

Rule 1252 provides: "A foreign attachment may be issued to attach property of a defendant not exempt from execution upon any cause of action at law or in equity, *other than an action ex delicto arising from acts committed outside the Commonwealth,* in which the relief sought includes a judgment or decree for the payment of money . . . ." (Emphasis supplied.)

---

"14. The said unlawful, malicious, and purposeful conspiracy, as aforesaid, and the means of effecting same, did constitute abuse of civil process and an improper and unlawful use of the records of the California Courts as a forum for publishing the said libels and defamatory matter . . . .

"15. Well knowing that the plaintiff . . . had fully proved the said instrument . . ., they effectively accomplished the purposes of the conspiracy . . . with the result that a Decree denying probate was entered therein on June 30, 1961.

"16. As a result of the conspiracy and combination, as aforesaid, the plaintiff has, by means which are apparently lawful, been unlawfully cheated and defrauded of his one-third interest in the estate of Evelyn M. Vant and his right to the entire estate of Roberta McKaig, deceased, as well as the beneficial use, enjoyment and profits therefrom. Furthermore, plaintiff has suffered irreparable damages and humiliation as a result of the said civil proceedings."

As originally filed, appellee's allegations were of a conspiracy to obtain fraudulently a decree by the California court, a conspiracy which took place entirely in California, and of defamation in that state. Thus, the complaint on its face revealed a lack of jurisdiction in the court under Rule 1252, and appellants' preliminary objections were well taken. The court below, over appellants' objections, permitted appellee to amend his complaint so as to cure the jurisdictional defect and to allege conduct giving rise to jurisdiction in Pennsylvania.

Appellants' position is that since the initially alleged cause of action arose in California, the writ was fatally defective and the complaint could not be amended to validate the writ by advancing jurisdictional allegations not originally asserted. However, our determination here makes it unnecessary for us to pass upon this argument and upon the propriety of granting leave to amend.

It is quite evident from the complaint, as amended, that appellee again has failed to allege jurisdiction within Rule 1252. His amended pleading merely adds that appellants instituted civil proceedings in the Orphans' Court of Allegheny County (petition for grant of letters of administration) in 1957 (two years prior to the California will contest of 1959),[2] and that appellee, in 1962, abandoned his appeal from the California adjudication of June, 1961, in reliance upon an apparently oral compromise communicated to his Pittsburgh attorney, with which appellants failed to com-

---

[2] An examination of the record in the Allegheny County proceeding, to which appellee specifically refers by number and year, reveals that the marriage between appellee and Evelyn McKaig Gish Vant was dissolved by final decree in divorce entered in California, December 16, 1954. Appellee unsuccessfully attempted to set aside and annul the decree in 1958. *Heathman v. Vant*, 343 P. 2d 104 (Calif. Dist. Ct. App. 1959).

ply after the appeal was withdrawn.[3] By these additional allegations, appellee sought to establish that ap-

[3] The following are excerpts from the pertinent amended paragraphs:

"12. ... [the defendants] did in the County of Allegheny, Pennsylvania, within the jurisdiction of this Court, conspire, combine, confederate and agree together, willfully and maliciously to cheat and defraud the plaintiff of his property and interest in the said estates. Furthermore, they did initiate or obtain the initiation of civil proceedings, which said proceedings were initiated without probable cause, maliciously for the purpose of depriving the plaintiff of his property and the beneficial use of his property in the said estates.

"13. The said civil proceedings were prosecuted . . . [in the Orphans' Court of Allegheny County and Superior Court of California]; and were presented on defendants' behalf by their father . . . and their attorneys. The said California civil proceedings were commenced on May 20, 1959, and consisted of Objections to Probate of Will; wherein the said defendants themselves and in combination with their said father, attorneys and agents, did falsely and fraudulently represent that their mother, Evelyn McKaig Vant, at the time of the execution of her said Will on May 2, 1947, lacked testamentary capacity and that the plaintiff herein exercised duress and undue influence upon her, and that their mother's alleged incompetence was partially due to her use of intoxicants and narcotics. The defendants nevertheless completely failed therein to offer a scintilla of evidence from a competent witness in their attempts to support their false and fraudulent representations. The said civil proceedings were knowingly and wholly false, fraudulent and maliciously designed to effect the purposes of the said conspiracy and to slander, defame, libel and bring the plaintiff into public hatred, ridicule and contempt. None of the said civil proceedings initiated by and on behalf of the defendants was true, and the defendants well knew the averments made therein to be false at all times since initiating the same.

"15. Well knowing that the plaintiff, Walter J. Vant, pursuant to his Petition of May 1, 1959, for probate of the said Last Will and Testament . . . had fully proved the said instrument to be the valid and subsisting Last Will and Testament of Evelyn M. Vant, the said defendants themselves and through their said father, attorneys and agents, did prosecute the said civil proceedings; and thus they effectively accomplished the purposes of the con-

pellants' conduct constituted an action of tort in Pennsylvania within Rule 1252.

It is evident from an examination of the amended pleading that the injury complained of remains the California decree which deprived appellee of the property in the estate there adjudicated. Only under the will denied probate in California could appellee obtain the amount of property to which he claims he is entitled.

Under the usual and prevailing doctrines of conflict of laws, the situs of a tort is the place of the injury. See *Openbrier v. General Mills, Inc.*, 340 Pa. 167, 16 A. 2d 379 (1940); *Mike v. Lian*, 322 Pa. 353, 185 Atl. 775 (1936); Restatement, Conflict of Laws, §377 (1934). In the language of the Restatement, §377, "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."[4] Since a conspiracy is actionable

---

spiracy, as aforesaid, by means thereof, with the result that a Decree denying probate was entered therein by Judge NEWCOMB CONDEE on June 30, 1961. Upon the entry of the said Decree, Judge CONDEE stated that he was doing so, although believing that he would be reversed in an Appeal. An Appeal therein was filed on October 11, 1961, on behalf of the plaintiff herein. On April 16, 1962, in furtherance of the combination and conspiracy, as aforesaid, the defendants did through their attorneys at Pittsburgh, Pennsylvania, stipulate and agree with the plaintiff herein, through his Pittsburgh attorney, that upon the abandonment of the said Appeal and furnishing of a Court Certificate to that effect, they would make a compromise payment to the plaintiff on the following day. The plaintiff forthwith, through his attorneys, relying upon the said stipulation and agreement of counsel, did abandon his said Appeal through a Voluntary Dismissal of Appeal filed in the said proceeding on April 19, 1962, and promptly thereafter submitted a certified copy thereof, as agreed, to the defendants' attorneys at Pittsburgh, but thereupon was notified that the defendants refused to perform their said agreement of compromise, after your plaintiff's said voluntary abandonment of his Appeal."

4 The most recent pronouncement of the Restatement on choice of law in tort actions is that "the local law of the state which has

only when there is injury to the complainant, *Helmig v. Rockwell Manufacturing Co.*, 389 Pa. 21, 35, 131 A. 2d 622, 629 (1957) ; 7 P.L.E., Conspiracy §1 (1958), under the principle of the Restatement, even if the alleged conduct in Pennsylvania could be considered part of the conspiracy, the situs of the tort is California where a court of competent jurisdiction rendered an adjudication denying to appellee property the value of which he here seeks to recover.

Although appellee labels his action as one for conspiracy to defraud, a careful reading of the pleadings indicates that he may also have alleged causes of action for malicious use or abuse of process.[5] However, so considering his amended complaint, we remain convinced that the allegations place the situs of the tort in California.

Further, we have indicated in *Alpers v. N. J. Bell Telephone Co.*, 403 Pa. 626, 170 A. 2d 360 (1961), and by subsequent amendment of Rule 1252, that jurisdiction to issue writs of foreign attachment in tort cases is strictly limited to torts committed within this Commonwealth. See also Wolf, Foreign Attachment in Tort Cases, 32 Pa. B.A.Q. 217 (1961).

The Allegheny County Orphans' Court proceeding was commenced by appellants two years prior to the probate action instituted by appellee in California, as previously indicated. It is inconceivable that the mere commencement of a Pennsylvania proceeding (not pur-

---

the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort." Restatement (2d), Conflict of Laws §379 (Tent. Draft No. 8). Although we are here concerned with the situs of the tort under Rule 1252 rather than with choice of law, the central focus of the tort here complained of is still in California.

[5] For a summary of the differing characteristics of these torts see *Dumont Television & Radio Corp. v. Franklin Electric Co.*, 397 Pa. 274, 154 A. 2d 585 (1959) ; Laub, Penna. Trial Guide §435 (1959).

sued to adjudication at that time) could meaningfully affect or be a contributing influence or producing cause in the legal result of the probate proceeding instituted 2,500 miles away. Similarly, appellee's appeal from the adverse adjudication and his discontinuance of that appeal clearly and obviously involve California conduct. It is only the communication to appellee's Pittsburgh counsel of the alleged oral compromise that is placed in Pennsylvania. Neither one nor both of these allegations are of sufficient factual or legal significance or relationship to the injury complained of to constitute conduct in Pennsylvania of the nature essential to establish jurisdiction of appellee's cause of action under Rule 1252.

Therefore, in view of the record here presented, we find that, even on the amended complaint, the court below lacked jurisdiction to issue the writ of foreign attachment, and the attachment should have been dissolved.

There remains the additional question of whether or not appellants, by filing preliminary objections and a petition to release assets attached far in excess of the amount claimed, have engaged in conduct which amounts to a general appearance. If such conduct constitutes a general appearance, the proceeding below, after dissolution of the attachment, would continue as an ordinary in personam action in trespass.

As already noted, the preliminary objections consisted of a demurrer, a question of jurisdiction, a motion to strike, an allegation of lack of capacity to sue, an allegation that the assets were exempt from attachment, and an allegation that no property of appellants was in possession of the garnishees at the time of the attachment.

Ordinarily, any response by a defendant to the merits of a case will constitute a general appearance. See *Yentzer v. Taylor Wine Co.*, 409 Pa. 338, 186 A. 2d

396 (1962) ; *Aquilina v. Doan,* 374 Pa. 405, 97 A. 2d 520 (1953) ; Goodrich-Amram, §1017(b)-7. Thus, preliminary objections, such as demurrer, which attack the substance and form of the complaint, will subject a defendant to the jurisdiction of the court. *Yentzer v. Taylor Wine Co.,* supra. But Rules 1028(b) and 1032 require a defendant to join all his preliminary objections in one pleading, including attacks on jurisdiction. Otherwise, they will be deemed waived. Should a defendant object only to jurisdiction, he loses his right to raise all other preliminary objections if the court rules against him on the jurisdictional question. Should he raise all the preliminary objections allowable, in addition to questioning jurisdiction, appellee would have us hold that the defendant has waived the challenge to jurisdiction over his person.

The same dilemma arises under Rule 1271 which provides: "The defense of immunity or exemption of property from attachment and the defense that no property of the defendant was in the possession of the garnishee at the time of service of the attachment [both raised by appellants here], may be raised by the defendant without thereby subjecting himself to the jurisdiction of the court (1) by preliminary objection under Rule 1017(b)(1) . . . ." Should a nonresident defendant, whose property has been attached, wish to raise by preliminary objections the defense of immunity under Rule 1271, he risks either losing all other defenses permissible in preliminary objections should he not raise them, or subjecting himself to the jurisdiction of the court should he raise all those defenses in the same pleading.

In promulgating the rules on preliminary objections, it was the intention of this Court to reduce the number of dilatory steps taken by a defendant prior to filing an answer. *Yentzer v. Taylor Wine Co.,* supra. It was not our intention to place a defendant in

a position where, in order to challenge jurisdiction, or to raise questions under Rule 1271, he must forfeit all other defenses or objections which may be raised solely by preliminary objections, or, conversely, where he must submit to the jurisdiction of the court generally if he wishes to preserve these other defenses. Therefore, it is our conclusion that in addition to his jurisdictional objections and to his assertions under Rule 1271, a defendant may raise all other defenses properly raised by preliminary objections without being deemed to have entered a general appearance. Should the court determine that it lacks jurisdiction, the other objections are of no moment. Should the court hold that it has jurisdiction, the defendant will not have lost or waived his other defenses. See Goodrich-Amram, §1017(b)-7.

Appellee also urges that appellants' petition for partial release of attached assets on the ground of excessive attachment constitutes a general appearance. Such a petition is permitted under Rule 1272(h), but that rule says nothing with reference to general appearance resulting from filing the petition. This is in contrast to Rule 1272(c), which provides for the total dissolution of the attachment upon filing a bond, coupled with Rule 1269(b), which provides that upon filing a bond or security, ". . . the action continues as if commenced by personal service . . . ."

The intention of Rule 1272(h) is plainly to prevent a situation in which a plaintiff attaches property of the defendant many times in excess of even the most optimistic possible recovery. See Goodrich-Amram, §1272(h)-1. The Rule itself says: "The court on petition of any party may, at any time after notice and hearing, release part of the attached property *if the value of the property attached is excessive compared to the amount in controversy.*" (Emphasis supplied.) Since after a release under Rule 1272(h) there still

remain sufficient assets from which a judgment may be satisfied, it is unnecessary to require a bond or security. The action of a defendant in securing the release of such assets without bond or security should not result in attributing to his conduct the same effect, i.e., general appearance, as where he files a bond or security (as a substitution) for release of all attached assets.

Immediately preceding the rule here under discussion is Rule 1271, which provides: "The defense of immunity or exemption of property from attachment and the defense that no property of the defendant was in the possession of the garnishee at the time of service of the attachment, may be raised by the defendant without thereby subjecting himself to the jurisdiction of the court . . . ."

Clearly, the purpose of Rule 1271 is to free from attachment property not subject to execution in satisfaction of plaintiff's claim. A defendant may have such property released without subjecting himself to the hazards of a general appearance. Since excessively attached property is no more subject to execution than immune or exempt property, there is no logical reason for not according the defendant seeking the release of such excessively attached property the same protection as granted in Rule 1271.

In a foreign attachment proceeding, the great majority of advantages lie initially with the plaintiff. Most important of these is that plaintiff himself, without the necessity of posting security, asserts the amount of his claim and designates specific property to be attached by the sheriff. This is pursuant to Rule 1255: "(a) The attachment shall be commenced by filing with the prothonotary a praecipe for a writ which shall direct the sheriff to attach such specific items of property of the defendant as are set forth in the praecipe and all other property of the defendant. *The prae-*

*cipe shall state the amount of the plaintiff's claim."* (Emphasis supplied.) Since this rule permits a plaintiff to attach property far in excess of his stated claim, he should not have the additional advantage of having Rule 1272(h) construed to mean that a defendant, by his efforts to release such excessive property, has submitted himself to the jurisdiction of the court.

While the result of foreign attachment may be to compel a nonresident defendant to appear, this should not be accomplished by obvious and unfair over-attachment. A major purpose of such process is to hold defendant's property as security for the satisfaction of such judgment as plaintiff may establish his right to recover. When a plaintiff attaches substantially more than is claimed by him, he cannot be heard to contend that defendant's petition under Rule 1272(h) to protect the excessively attached property constitutes a general appearance.

We conclude, therefore, that because appellee has attached assets greatly in excess of the value he himself has placed upon his possible recovery, appellants' petition under Rule 1272(h) does not constitute a general appearance. Under these circumstances, we do not consider appellants' efforts to protect the excessively attached property a challenge to the merits of appellee's cause of action or participation in the substantive issues of the litigation.

Since appellee failed to cure the jurisdictional defect, the preliminary objections should have been sustained and the attachment dissolved. Further, since appellants have manifested no conduct which may be construed as a general appearance, the complaint must be dismissed. The attachment is dissolved and the complaint dismissed.

Reversed.