440 A.2d 576

**COMMUNITY ASSOCIATION OF POCONO FARMS, INC.**

v.

**RECRA–DEL CORPORATION.**

**Appeal of Kenneth BRUSH and Helen Brush, His Wife.**

Superior Court of Pennsylvania.

Argued Nov. 4, 1981.

Filed Jan. 19, 1982.

Petition for Allowance of Appeal Denied May 3, 1982.

---

Edwin Krawitz, East Stroudsburg, for appellant.

C. Daniel Higgins, Stroudsburg, for appellee.

Before BROSKY, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Plaintiff-Appellee, Community Association of Pocono Farms, Incorporated (hereinafter referred to as the "Association"), had a judgment against the Defendant, Recra-Del Corporation, and filed execution proceedings against real estate owned by Recra-Del in order to enforce payment of the judgment. The judgment in question created a lien on 294 lots which were situated in 2 developments known as Pocono Farms and Smokey Ridge. Pursuant to the writ of execution, the Monroe County Sheriff had advertised the aforesaid lots for sale. The Appellants, Kenneth and Helen Brush, had acquired beneficial title from Recra-Del Corporation to 49 of the 294 lots which were all subject to the lien of the Appellee's judgment. The Appellants filed a petition in the lower court requesting a stay of the execution and the release of their 49 lots from attachment and execution.

They contended that the value of the total property attached by the Association, and scheduled for sale, was excessive in comparison to the amount of the Association's judgment against Recra-Del Corporation.

The lower court held a hearing on the Appellants' petition, and expert witnesses testified for both the Appellants and the Appellee concerning the fair market value of the property subject to the Appellee's execution. After hearing all of the evidence, the lower court denied the Appellants' petition to except their 49 lots from the execution sale, and further directed the sheriff to proceed with that sale. On this appeal, the Appellants contend that the lower court erred in determining the value of the property by disregarding evidence offered by the Appellants which purportedly established a value for the water system servicing the property. We must disagree.

Applicable practice would clearly allow the lower court to provide for the release of property from attachment and execution if good cause is shown. We find two Rules of Civil Procedure particularly relevant in the circumstances of the instant case. Rule 1272, dealing with attachment of property, provides the following in subsection (h):

"The court on petition of any party may, at any time after notice and hearing, release part of the attached property if the value of the property attached is excessive compared to the amount in controversy."

In *Vant v. Gish,* 412 Pa. 359, 194 A.2d 522 (1963), our Supreme Court stated that the intention of Rule 1272(h) is: "... plainly to prevent a situation in which a plaintiff attaches property of a defendant *many times in excess* of even the most optimistic possible recovery". (emphasis added) 412 Pa. at 369, 194 A.2d at 528. Rule 3119 deals with the release of property from levy, and provides that upon good cause shown, and the petition of any person or party in interest, the court may: "(2) release part of the property, if the value of the property levied upon is excessive compared to the amount of the judgment, interest and probable costs." In the instant case, the lower court determined that the amount attached by the Plaintiff-Appellee was not excessive

to the point which would justify the release of the 49 lots in which the Petitioner-Appellants had a beneficial interest. We can discern no abuse of discretion by the lower court in that determination.

The record shows that the Appellee Association had a judgment against the Defendant in the sum of $476,000.00. Further, there was uncontradicted testimony offered that in addition, the costs of the execution proceedings would total in excess of $34,000.00. At the hearing, the Appellant called an expert witness who testified that the fair market value of all of the properties subject to the execution was $800,-000.00. Included in his total valuation was the estimate that a water system servicing some of the properties subject to the challenged execution had a value of $250,000.00. He admitted he did not consider the financial records of the water company in making his appraisal and also admitted that he did not have any personal knowledge as to the condition of the water system, or the need for possible repairs or additional wells. In valuing the system, the Appellants' expert testified that he was discussing replacement value, and did not speak to market value. He admitted that the system would not have a market value based upon its current income and further added that in order to create a market value, the system would have to be "revised", and charges assessed by it to property owners would have to be "upgraded".

The Appellee also provided expert testimony as to value. The Appellee's expert placed a value on all of the property subject to execution at $405,000.00. He explained that the lots in question were not all in one location but were scattered throughout the development. He also related that the water system was not complete and that substantial additional footage was needed, both to improve it and to extend it to some of the lots in question. He testified that the water company evaluation was actually included in the value of the lots. He testified that many of the lots would be difficult to sell because they were scattered, in marsh areas, and were not even serviced by roads. The second expert called by the Association concluded that the total

valuation for the property in question was $368,000.00. He described the total development as being "inactive" and stated that there was no marketing program under way for them. Further, he noted that a considerable amount of maintenance had been deferred, leaving the roads in disrepair and needing attention. He described the lots included in the execution as "picked-over lots that have been left over from a marketing program". The president of the Association also testified. Particularly noteworthy was his disclosure that in excess of $42,000.00 in estimated repair costs were needed for the water system. He testified that the developer, the Defendant Recra-Del Corporation, had stopped selling lots at Pocono Farms approximately four to five years prior to the hearing, and that the roads, water company and utilities were not completed in the development. Finally, he testified that there was a commitment on behalf of the Association to deed over some 60 lots in the levied group to past purchasers who had never received their deeds from the Defendant. Such transfers were supposed to occur without any consideration.

After hearing all of this evidence, the trial judge decided that he could not release the Appellants' 49 lots from the sale. He found that the property in question was not readily convertible to cash but would require either a bulk sale of the lots or a marketing program to be reinstituted at the development. Such procedures would have required a considerable expense on the part of any investor. As to the disputed valuation of the water company, the trial judge noted that the evidence was that the system was operating at a substantial loss, and had no attraction for an investor. The evidence of needed repairs and additional footage for the system was not contradicted. The judge found that the elimination of the $250,000.00 value from the estimate of the Appellants' expert would result in a valuation not in excess of the debt, interest and costs due the Appellee. Thus, he concluded that there was no justification for the release of properties sought by Appellants.

We can certainly see no error in the lower court's refusal to except the Appellants' lots from the total group involved

in the sheriff's sale. The critical question to be resolved in these cases is whether the value of the property attached is "excessive" compared to the amount in controversy. See Rules 1272(h) and 3119. We are not presented in the instant case with a record establishing that the property attached by the Plaintiff-Appellee had a value many times in excess of the most optimistic possible recovery at sheriff's sale. See *Vant v. Gish, supra.* In fact, the preponderance of the evidence indicates the contrary. Further, as to the disputed value of the water company, despite the claim of Appellants' expert, it is clear that no investor would offer anything for that system at a sheriff's sale. Thus, we must reject the contention that the water system had the value ascribed to it by the Appellants. Moreover, the Appellants did not present any convincing proof that the lots and other property remaining, if their petition was granted as to the 49 lots, would still have had a value clearly sufficient to protect the total interests of the Appellee in satisfying its judgment, interest and related costs. In all of these circumstances, we find no basis for a reversal of the lower court's order.

Affirmed.