679 A.2d 820

**COMMONWEALTH BANK, A DIVISION OF MERIDIAN BANK, Appellant,**

v.

**Mary IORIO, Robert Eddowes and Larraine Eddowes, Appellees.**

Superior Court of Pennsylvania.

Argued March 13, 1996.

Filed July 24, 1996.

332

Eileen A. Reilly, West Pittston, for appellant.

Megan P. Maguire, Kingston, for Robert & Larraine Eddowes, appellees.

Before BECK, KELLY, and OLSZEWSKI, JJ.

KELLY, Judge:

In this appeal, we are called upon to determine whether the Common Pleas Court of Luzerne County properly granted the appellees, Mary Iorio, Robert Eddowes and Larraine Eddowes', petition to release from the sheriff's levy in favor of the appellant, Commonwealth Bank, certain properties known as Lot 42, Block 8, Section 6 and Lot 8, Block 9, Section 6 of Indian Lake Allotment, Buck Township, Luzerne County, Pennsylvania. We hold that pursuant to Pa.R.Civ.P. 3119(2), the court may release part of the property if the value of the levied property is excessive compared to the amount of the judgment, interests and probable costs. Thus, we affirm.

The relevant facts and procedural history of this appeal are as follows:

1. On February 28, 1991, Mary Iorio and her husband, Leonard Iorio (now deceased) as well as their daughter and son-in-law, Larraine Eddowes and Robert Eddowes, executed a promissory note in favor of Meridian Bank in the principal amount of One Hundred Forty Thousand Five Hundred ($140,500.00) Dollars and, in addition, as collateral for said note, gave Meridian Bank a mortgage of even date securing the Fireside Inn property as well as the Eddowes family residence and adjoining lot located in Indian Lake, Buck Township, Luzerne County, Pennsylvania.

2. The Fireside Inn property as well as the Indian Lake properties were scheduled to be sold [a]t sheriff's sale on April 7, 1995.

3. As of April 7, 1995, the total amount due the bank under the terms of the note was One Hundred Forty–Five Thousand Nine Hundred Twelve and 99/100 ($145,912.99) Dollars.

4. The taxes and costs outstanding as of April 7, 1995, was Thirty–Five Thousand Four Hundred Eighty–Seven and 82/100 ($34,487.82) [sic] Dollars.

5. In total, the outstanding amount due under the note as well as taxes and costs equal One Hundred Eighty Thousand Four Hundred and 81/100 ($180,400.81) Dollars.

6. Robert Eddowes and Larraine Eddowes filed a Petition to Release Property from Levy and Stay Sheriff's Sale thereon pursuant to Pennsylvania Rule of Civil Procedure 3119 and 3121(b)(2).

7. On April 7, 1995, an Order was entered continuing the sale of the Indian Lake properties to June 9, 1995.

8. The sheriff's sale as to real estate known as the Fireside Inn, Route 115, Buck Township, Luzerne County, Pennsylvania, was conducted on April 7, 1995, at which time Commonwealth Bank, the sole bidder, obtained title to the Fireside Inn property.

9. Robert Eddowes and Larraine Eddowes presented the expert testimony of Charles A. Moyer, MAI, of Patt, White and Whitney.

10. Mr. Moyer, a Pennsylvania licensed real estate broker, is an expert real estate appraiser with primary experience in appraisal of commercial property.

11. A majority of Mr. Moyer's work is conducted in Luzerne County and neighboring counties.

12. Mr. Moyer was employed by Robert Eddowes and Larraine Eddowes to make a market value appraisal of the Fireside Inn property and the Indian Lake properties.

13. Mr. Moyer was paid for making this appraisal and his fee was not contingent upon the value estimate reported or upon the results of the proceeding.

14. Mr. Moyer does not have any interest in the properties under appraisement, either directly or indirectly, or any contemplated future interest.

15. Mr. Moyer prepared an appraisal report which was submitted at the time of hearing as Petitioners Robert Eddowes and Larraine Eddowes' Exhibit "A".

16. Mr. Moyer made a personal physical inspect of the Fireside Inn and Indian Lake properties on April 25, 1995, as well as photographed the properties as submitted in his report.

17. Mr. Moyer reviewed relative data at the Luzerne County Courthouse and municipal offices, reviewed data developed by Patt, White and Whitney, and pertinent resource materials.

18. Market value is the "most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming that the price is not affected by undue stimulus. Implicit in his definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: 1. Buyer and Seller are typically motivated[;] 2. Buyer and Seller are well informed or well advised, and are acting in what they consider their own best interest; 3. A reasonable time is allowed for exposure in the open market; 4. Payment is made in terms of cash in U.S. Dollars or in terms of financial arrangements comparable thereto; and 5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

19. The Fireside Inn real estate only was transferred from Leonard A. and Mary Iorio to Mark J. Kraft, James A. Kraft and Davis A. Kraft on May 24, 1981, for the amount of Four Hundred Ninety Thousand ($490,000.00) Dollars.

20. During the latter half of 1994, the Fireside Inn real property was placed on the market with a listing price of Four Hundred Ninety–Five Thousand ($495,000.00) Dollars.

21. An Agreement of Sale was entered into during October 1994 for the amount of Two Hundred and Fifty Thousand ($250,000.00) Dollars.

22. The Agreement, a copy of which is attached to Plaintiff's brief, provides that the sale price of the real

estate was One Hundred Thirty Thousand ($130,000.00) Dollars.

23. As Ronald Wydo, Esquire, counsel for Mary Iorio, testified the One Hundred Thirty Thousand ($130,000.00) Dollars allocation for the real property was solely for the buyer's tax benefit as suggested by his accountant and said sum did not reflect the market value of the Fireside Inn real property.

24. Attorney Wydo testified that Mary Iorio agreed to sell the property for the amount of money needed to pay all the creditors of the Fireside Inn, without profit to her, said amount being Two Hundred Fifty Thousand ($250,000.00) Dollars.

25. In October, 1994, Mary Iorio was, as Attorney Wydo and Larraine Eddowes testified, a distressed, disadvantaged and highly motivated seller which forced her to agree to sell the Fireside Inn property at below market value.

26. The sales agreement of October 1994, fell through due to the buyer's financial status.

27. The Fireside Inn is located on Pennsylvania Route 115, Buck Township, Luzerne County, with two hundred fifty (250) feet of road frontage and contains 4.53 acres.

28. The Fireside Inn property is improved with a one and part two-story, wood frame and masonry brick first floor restaurant and second floor apartment structure containing nine thousand four hundred and seventy-eight (9,478) square feet of gross building area.

29. The improvements were originally constructed around 1923, with subsequent additions and renovations made up to 1984.

30. The layout of the subject property consists of four general areas, a lower level bar, dining room/bar, kitchen and a second floor living area.

31. The Luzerne County Tax Assessor's Office identifies the Fireside Inn parcel as No. 1 K14–1–13 and values the subject property (only the real property) as Two Hundred

Seventy–Seven Thousand, Five Hundred and Thirty–Two ($277,532.00) Dollars.

32. The highest and best use is the use that supports the highest present value as defined, as of the effective date of the appraisal.

33. The Fireside Inn property was vacant, considering the unavailability of public utilities, the physical aspects of the site, the neighborhood and the location of the site within the neighborhood would be commercial use.

34. The improvements to the real property add value to the site in excess of the value if the site as vacant and, therefore, substantiate their continued use, therefore, the highest and best use of the subject property as improved is for continuing use as a restaurant facility.

35. In order to determine the market value of the real estate known as the Fireside Inn, Mr. Moyer utilized a cost approach, which considers the current cost of replacing a property, less accrued depreciation from three sources: physical deterioration, functional obsolescence and economic obsolescence.

36. The cost approach consists of four steps: valuation of the land as if vacant, estimation of replacement cost new of the existing structures and/or improvements; an estimate of accrued depreciation found in the improvements (the total depreciation present in the improvements is deducted from its cost new to indicate a depreciated value of improvements); and the addition of the land value and the depreciated replacement cost of structures and improvements to indicate a value estimate.

37. The first step in the cost approach involves placing a value on the subject property as if it is vacant, determining the highest and best use of the land as if vacant and a comparison of recent sales of comparable land with an equivalent highest and best use.

38. Four recent purchased [sic] of commercial vacant land were analyzed by comparing relevant units of compari-

son among the sales themselves in order to determine subjective adjustments required for certain factors.

39. Based on the comparisons of vacant commercial land, the value of the subject site, as if vacant, is valued at Fifteen Thousand ($15,000.00) Dollars per acre or an overall rounded value of Seventy Thousand ($70,000.00) Dollars.

40. The existing septic system for the restaurant is inoperable and in need of replacement. The cost to replace the existing septic system was estimated at Twenty–Five Thousand ($25,000.00) Dollars, a reasonable market amount. Mr. Moyer utilized said amount and has adjusted his market value of the subject property to reflect said amount.

41. Mr. Moyer in his cost approach appraisal method also considered the entrepreneurs profit which is a market derived figure that represents the amount an entrepreneur expects to receive in addition to cost; the difference between total cost and market value.

42. The cost approach indicates a market value of the Fireside Inn property of Three Hundred Forty–Two Thousand Seven Hundred and Fifty–Nine ($342,759.00) Dollars with a deduction for the septic replacement, resulting in a (rounded) market value of Three Hundred Twenty Thousand ($320,000.00) Dollars.

43. The sales comparison approach which produces an estimate value by comparing the subject property to the sales of similar properties in the same or competing areas was utilized to determine the market value of the Fireside Inn property by Mr. Moyer.

44. The important factors considered to affect the value of the subject property in relation to comparable sales are the nature of surrounding development, the availability of competing property, the relative size of both the site and improvements, the condition and physical aspects of the improvements, the age of the improvements, and functional, physical and economic characteristics.

45. The motivation of the parties to the transactions, the prevailing economic conditions as well as the market were

researched by Mr. Moyer to identify comparable properties in the surrounding region.

46. Mr. Moyer, in estimating the value of the subject property through the sales comparison approach, examined five sales of restaurant facilities which occurred between May 1991 and August 1994.

47. The comparable sales were analyzed by comparing relevant units of comparison among the sales themselves in order to determine subjective adjustments required for certain factors.

48. The major elements of comparison used by Mr. Moyer in his analysis included the property interest conveyed, financing terms incorporated into a particular transaction, the conditions or motivations surrounding the sale, changes in market conditions since the sale, the location of the real estate, its physical traits and potential economic characteristics of the site.

49. Adjustments were made for any advantageous or unusual financing, any unusual buyer or seller motivations, or any other condition of sale influencing the sale price, changes in market conditions since the date of transfer of the comparable sale and the date of value for the subject property as well as adjustments for location, physical characteristic and economic conditions.

50. All comparable sales were fee simple interests, all sales were financed with market terms except for one which however, was reported at market, no unusual conditions or motivations surrounded the sales and the market appeared to be stable thus not [sic] time adjustment was warranted.

51. The sales comparison approach reflects the subject property as having a Thirty-Six ($36.00) Dollars per square foot value, rendering an overall market value of Three Hundred Forty-One Thousand Two Hundred and Eight ($341,208.00) Dollars. After the deduction of Twenty-Five Thousand ($25,000.00) Dollars for the replacement of the septic system, the Fireside Inn property renders a market value of Three Hundred Sixteen Thousand, Two Hundred

and Eight ($316,208.00) Dollars, rounded to Three Hundred Fifteen Thousand ($315,000.00) Dollars.

52. A third approach, the income approach, is used to value investment commercial properties purchased by investors on the basis of the income which is produced.

53. The income approach valuation is made before income tax and does not take into consideration the depreciation, investment credits or other special conditions related to the financial position of the individual investor. The net income stream developed for the property is converted into an indication of value using direct capitalization and discounted cash flow analysis.

54. The subject improvements represent a class of real estate which is typically owner-occupied or built-to-suit. A research of data in the neighborhood as well as region, revealed no relevant data in the market regarding the subject's improvements. The date [sic] revealed that these structures are seldom tenant occupied but rather are predominantly owner-occupied. This type of real estate is not considered institutionalized, investment-grade real estate and as such the income approach was not developed by Mr. Moyer.

55. The market values of the Fireside Inn derived from the cost approach and sales comparison approach are correlated as a check system to confirm the validity of each derived market value.

56. The difference between Mr. Moyer's cost approach and sales comparison approach is less than two (2%) percent, which indicates that each approach value was reliable. The less than two percent difference is based on required adjustments not entirely scientific in nature but subjective.

57. The sales comparison approach is a good indication of value for these types of buildings. The data presented strong support for the value conclusion. This approach is considered a desirable indicator of value for real estate in that it is the easiest to understand and reflects the actions of buyers and sellers in the market place.

58. The Indian Lake properties consist of one parcel approximately .21 acre[s] and includes approximately sixty feet of lake frontage. Said parcel is improved with a one story with a lower level, wood frame, single family residence containing one thousand eight hundred thirty-six (1,836) square feet. The improvements were originally constructed around 1962 with subsequent renovations occurring in the late 1980's. The second parcel is an unimproved lot containing .21 acres.

59. The date [sic] indicates that the parcels are recorded as an assembled parcel under one deed and were purchased on October, 1987, for the consideration of Fifty-Five Thousand ($55,000.00) Dollars.

60. The Indian Lake properties are assessed by the Luzerne County Tax Assessor's Office as [sic] Five Thousand ($5,000.00) Dollars, or a market value of Sixty-Four Thousand Nine Hundred and Thirty-Five ($64,935.00) Dollars.

61. The highest and best use of the Indian Lake site as vacant is for residential use and the highest and best use of the improvements is for residential occupancy.

62. The sales comparison approach was utilized by Mr. Moyer to determine the market of the Indian Lake property.

63. Three comparable sales occurring between January 1992 to August 1994 in the Indian Lake Subdivision were considered.

64. Adjustments similar to those listed in Paragraph 50 were employed to determine the market value of the subject properties.

65. The market value for the Indian Lake property by the sale comparison approach is Seventy-Five Thousand ($75,000.00) Dollars.

66. The Respondent, Commonwealth Bank, submitted a narrative real estate appraisal report prepared by David J. Smith.

67. Mr. Smith also noted the Luzerne County Tax Assessor's Office places a market value of the real estate property known as the Fireside Inn as Two Hundred Seventy–Seven Thousand Five Hundred and Thirty–Two ($277,-532.00) Dollars.

68. The Luzerne County tax assessment of value of the property known as the Fireside Inn is One Hundred Two Thousand Five Hundred and Thirty–Two ($102,532.00) Dollars more than Mr. Smith's opinion of market value of One Hundred Seventy–Five Thousand ($175,000.00) Dollars.

69. Mr. Smith does not utilize his value of One Hundred Seventy-five Thousand ($175,000.00) Dollars in the income approach but rather uses the assessed value but testified that if the tax assessment were in line with his opinion of value of the property, the yearly income would be higher, resulting in a higher market value for the property.

70. Mr. Smith recognized the definition of market value and agreed with Mr. Moyer that one element of market value is that the buyer and seller are typically motivated.

71. Mr. Smith offered his opinion that if the subject property were vacant and available for development, the highest and best use of said property would be residential use.

72. Mr. Smith concluded that the best use of the property, as improved, is for commercial use.

73. Mr. Smith utilized the common method of the sales comparison approach whereby the subject property is valued as if the land were vacant.

74. Mr. Smith provided no explanation as to why he used comparable sales of vacant commercial land when he had concluded that in his opinion the highest and best use of the subject property would be residential use.

75. Mr. Smith's opinion of the value of the subject property as vacant is invalid in that he used one type of property (commercial) for comparison to another type of property (residential).

76. Mr. Smith identified in his appraisal report a basement containing sixteen hundred square feet which he testified as being what Mr. Moyer described in his report as a cellar.

77. Mr. Moyer testified that the area containing the sixteen hundred square feet (the cellar) was a finished area containing a bar as well as a separate entrance and exit.

78. Mr. Smith did not include the sixteen hundred square feet in his appraisal, and testified that he believed this area had no value.

79. The improved comparable sales Mr. Smith contained in his appraisal ranged from Twenty–Seven ($27.00) dollars per square foot to Fifty–Eight ($58.00) dollars per square foot yet he placed a value of Twenty ($20.00) dollars per square foot on the Fireside Inn property.

80. Mr. Smith notes in his report that adjustments must be made and provides information regarding rental properties although the subject property and the comparable properties are not rentals.

81. Mr. Smith as well as Mr. Moyer testified that it would be fair to assume that the operator of the property would also occupy the upper residence of said property.

82. The three rentals utilized by Mr. Smith range from Six and 32/100 ($6.32) dollars to Seven and 50/100 ($7.50) dollars per square foot however he placed a lower rental rate for the Fireside Inn real estate of Four and 50/100 ($4.50) dollars per square foot.

[83]. Based on Mr. Smith's opinion that the operator of the property would also likely occupy the upper residence and based on his opinion that the property had a rental rate of Four and 50/100 ($4.50) Dollars per square feet, then the rental rate of the upper residence would be Nine Thousand Nine Hundred Sixty–Three ($9,963.00) Dollars rather than the incorrect figure of Six Thousand ($6,000.00) Dollars as provided in Mr. Smith's report.

[84]. Mr. Smith did not include apartment rental comparisons in his appraisal report.

[85]. Mr. Smith used miscalculations, incorrect comparisons, and inapplicable data to ascertain the market value of the Fireside Inn property.

(Trial Court Findings of Fact, June 29, 1995).

On June 3, 1995, the trial court entered an order releasing from the sheriff's levy the Indian Lake properties known as Lot 42, Block 8, Section 6 and Lot 8, Block 9, Section 6 of Indian Lake Allotment, Buck Township, Luzerne County, Pennsylvania. This timely appeal by the appellant, Commonwealth Bank, followed.

The appellant raises the following issues for our review:

1. WHAT IS THE STANDARD FOR APPELLATE REVIEW OF A TRIAL COURT'S RELEASE OF PART OF A DEFENDANT'S MORTGAGED PROPERTY FROM LEVY?

2. DID THE LOWER COURT CORRECTLY INTERPRET THE LAW IN CONCLUDING THAT, UNDER THE FACTS OF THIS CASE, THE VALUE OF THE PROPERTY LEVIED UPON WAS EXCESSIVE COMPARED TO THE AMOUNT OF THE JUDGMENT, INTEREST, AND PROBABLE COSTS?

3. DID THE LOWER COURT ABUSE ITS DISCRETION BY IMPAIRING THE COLLATERAL SECURITY THAT THE PLAINTIFF HAD CONTRACTED FOR IN A LOAN TRANSACTION WITH THE DEFENDANTS?

(Appellant's Brief at 5).

In its first issue on appeal, the appellant questions what this Court's standard of review is in situations such as that presented instantly where the trial court releases part of the mortgaged property from sheriff's levy pursuant to Rule 3119 of the Pennsylvania Rules of Civil Procedure. This subject is one belonging to a class where trial courts are entrusted with a discretionary power to be exercised in view of all of the evidence presented to it for consideration. *First Nat. Bank of Koppel v. Mount*, 132 Pa.Super. 518, 520, 1 A.2d 547, 548 (1938). "In determining the propriety of releasing

only a part of the property from the levy, the critical question is whether the value of the property is excessive when compared to the amount in controversy, that is, the underlying judgment." 8 Goodrich–Amram 2d § 3119.8; *Community Association of Pocono Farms Inc. v. Recra–Del Corporation,* 294 Pa.Super. 498, 503, 440 A.2d 576, 578 (1982). Where the evidence submitted establishes that the value of the property attached by the judgment creditor is considerably greater than the amount of the judgment, a trial court does not abuse its discretion by releasing a portion of the property from the levy. 8 Goodrich–Amram § 3119:10; *Community Association of Pocono Farms Inc. v. Recra–Del Corporation, supra.*

■ Therefore, our standard of appellate review is to determine if the trial court's findings are supported by competent evidence, if there has been a clear abuse of discretion, if an error in the application of the law exists, or if the trial court arbitrarily disbelieved credible evidence. *Guttman Oil Co. v. Pennsylvania Insurance Guaranty Association,* 429 Pa.Super. 523, 527, 632 A.2d 1345, 1347 (1993); *C.R. by Dunn v. Travelers,* 426 Pa.Super. 92, 99, 626 A.2d 588, 592 (1993); *Chestnut v. Pediatric Homecare of America,* 420 Pa.Super. 598, 601, 617 A.2d 347, 349 (1992). Thus, we dispose of the appellant's first issue.

The second issue presented for our review is an assertion that the trial court erred when it incorrectly interpreted Pa.R.Civ.P. 3119. The appellant contends that the Supreme Court in *Vant v. Gish,* 412 Pa. 359, 194 A.2d 522 (1963), set a standard requiring the value of property levied to be "many times in excess" compared to the amount in judgment in order for part of the property to be released. We disagree.

Rule 3119 provides, "upon cause shown, on petition of any person or party in interest, the court may ... release part of the property, if the value of the property levied upon is *excessive* compared to the amount of the judgment, interests, and probable costs." Pa.R.Civ.P. 3119(2). *See Vant v. Gish, supra* at 369, 194 A.2d at 528. The appellant claims that *Community Association of Pocono Farms, Inc. v. Recra–Del Corporation, supra,* demonstrates that the trial court incor-

rectly interpreted Rule 3119 when it held the property levied was excessive. Upon review, we conclude that the trial court correctly interpreted Rule 3119.

In *Community Association of Pocono Farms, Inc. v. Recra–Del Corporation, supra,* the appellants had acquired title to forty-nine of two hundred, ninety-four lots which were subject to the lien of the appellee's judgment of five hundred, ten thousand ($510,000) dollars. This Court held that the trial court did not err or abuse its discretion when it determined that the amount attached by the appellee was not so excessive as to justify the release of the forty-nine lots. *Id.* at 503, 440 A.2d at 577.

At trial, in the above mentioned case, the appellant's expert estimated the fair market value of the property subject to execution at eight hundred thousand ($800,000) dollars. Included in this estimate was a water system valued at two hundred, fifty thousand ($250,000) dollars. The expert admitted that his evaluation of the property did not consider the financial records of the water company and that he had no information regarding the condition of the system or any need for repairs. *Id.*

The appellee in *Community Association of Pocono Farms v. Recra–Del Corporation, supra* presented the testimony of two experts. The first expert testified that the total value of the property was four hundred, five thousand ($405,000) dollars and explained that this estimate included the incomplete water system. He also related that because the lots were not in a single location but were scattered throughout the development, they would be difficult to sell. *Id.* at 502, 440 A.2d at 578. The appellee's second expert estimated the value of the property at three hundred, sixty-eight thousand ($368,000) dollars, and also noted that extensive repairs were needed on the water and road systems.

The trial judge concluded from the testimony that the sale of this property would require either a bulk sale or an intensive marketing program. Furthermore, the trial judge determined that, after eliminating the appellant's two hundred, fifty thousand ($250,000) dollar estimate of the value of

the water-system, the resulting valuation would not exceed the debt, interests, and costs due to the appellee. *Id.* at 502, 440 A.2d at 578. Thus, the result reached in this case is inapplicable to the instant case because Judge Conahan specifically determined that the combined value of the three properties the appellant wanted to be included in their levy was substantially greater than the existing debt. Instantly, after the trial court determined that the value of the Fireside Inn itself was more than sufficient to cover the existing debt, it excluded the two properties from the appellant's levy.

■ The appellant subsequently relies on *Vant v. Gish, supra,* which is cited within *Community Association of Pocono Farms, Inc. v. Recra–Del Corporation, supra.* The appellant contends that *Vant v. Gish, supra,* required the property in question to be "many times in excess" in order to be released from levy. This assertion is without merit.

In *Vant v. Gish, supra* at 359, 194 A.2d at 522, the appellee brought suit in the Court of Common Pleas of Allegheny County by writ of foreign attachment against the appellants who were residents of Illinois and the minor children of the appellee's late wife by a prior marriage. The appellee's claim was for $150,000 from the estate of his deceased wife. Assets worth $575,000 were attached, consisting of stocks and bonds that allegedly belonged to the appellants.

The appellants petitioned the trial court pursuant to Pa. R.Civ.P. 1272(h) (similar to Rule 3119) to release part of the attached property.[1] The trial court denied the appellants' jurisdictional challenge and motion to dismiss. On appeal, the Pennsylvania Supreme Court concluded that "because appellee had attached assets greatly in excess of the value he himself had placed upon his possible recovery, appellants' petition under Rule 1272(h) [d]id not constitute a general appearance." *Vant v. Gish, supra* at 370, 194 A.2d at 529.

In finding that the property attached was excessive, the Supreme Court cited Rule 1272(h) which provides that part of the attached property may be released "[i]f the value of the

---

1. Rule 1272(h) is similar to 3119; however, 1272 dealt exclusively with foreign attachments and was rescinded on September 29, 1989.

property attached is excessive compared to the amount in controversy." *Id.* at 369, 194 A.2d at 528 (citing Rule 1272(h)). Furthermore, the Supreme Court stated the intention of Rule 1272(h) was to prevent a situation where a plaintiff attaches a defendant's property which is valued many times in excess of the possible recovery. *Id.*

The Supreme Court, however, did not state as the appellants have argued, that the rule required the property must be many times in excess in order to be released from levy. On the contrary, the opinion states, "When a plaintiff attaches more than is claimed by him, he cannot be heard to contend that defendant's petition under Rule 1272(h) to protect the *excessively attached property* constitutes a general appearance. We conclude, therefore, that because appellee has attached assets *greatly in excess* of the value he himself has placed upon his possible recovery, appellants' petition ... does not constitute a general appearance." *Id.* at 371, 194 A.2d at 529 (emphasis added). As the Supreme Court used several different terms to describe whether the value of the property attached is excessive, it did not set "many times in excess" as the standard for interpreting Rule 3119.

 Instantly, the trial court determined that the total market value of the Fireside Inn was three hundred, fifteen thousand ($315,000) dollars, and the amount of the judgment was one hundred, eighty thousand, four hundred ($180,400) dollars. (Trial Court Findings of Fact, June 29, 1995). We conclude that the trial court correctly held that the Fireside Inn property was sufficient to cover the judgment and that attaching the Indian Lake properties would be excessive compared to the amount of judgment, interest, and probable costs.

 In its third issue, the appellant contends that the trial court abused its discretion when it removed two of the three properties from the levy because the original loan transaction included all three properties as collateral. Generally, this Court will not disrupt the rights of creditors to collect judgments. *Morgan Guaranty Trust Co. of New York v. Staats*, 428 Pa.Super. 479, 631 A.2d 631 (1993) (citing *Augustine v. Augustine*, 291 Pa. 15, 139 A. 585 (1927)).

However, we have said that a court has the authority to stay execution proceedings where it is necessary to protect the rights of the parties. *Kronz v. Kronz*, 393 Pa.Super. 227, 233, 574 A.2d 91, 94 (1990). "The grant of a stay of execution is within the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of that discretion." *Kronz v. Kronz, supra* (quoting *In re Upset Sale, Tax Claim Bureau of Berks*, 505 Pa. 327, 339, 479 A.2d 940, 946 (1984).

The appellant relies on *Kronz v. Kronz, supra*, for the premise that the order of the trial court releasing two of the three properties adversely affected the bank's substantive rights and was an abuse of discretion. In light of the facts of the case, however, the appellant's reliance is misplaced.

In *Kronz v. Kronz, supra*, the husband and wife obtained a loan for two hundred thousand ($200,000) dollars. Shortly thereafter, the mortgagee recovered a judgment of foreclosure for two hundred, thirty thousand ($230,000) dollars. Subsequently, the wife filed a petition alleging that the property was valued at six hundred, fifty thousand ($650,000) dollars and requesting the court to enjoin the sale of the property. After further proceedings, the petition was assigned to the Family Division for disposition and an order was issued which enjoined the mortgagee from executing its judgment.

On appeal, this Court held that the trial court had abused its discretion in that the trial court's order indefinitely enjoined the mortgagee from executing the judgment on the property in question or any other property owned by the husband and wife. *Id.* at 236, 574 A.2d at 95. Additionally, the trial court's order did not fix a minimum sales price, provide for the maintenance or repairs of the building, or provide for insurance coverage for the property. *Id.* Consequently, this Court concluded that the trial court had impaired the mortgagee's substantive rights without providing adequate interim security. *Id.*

In the case at bar, three properties were held as collateral whereas in *Kronz v. Kronz, supra*, only one property secured the mortgage. Appellant's substantive rights, therefore, were not impaired because the value of the Fireside Inn at three

hundred, fifteen thousand ($315,000) dollars exceeds the judgment of one hundred, eighty thousand, four hundred ($180,-400) dollars.

Based upon the foregoing reasons, the trial court's order directing the release from sheriff's levy of the Indian Lake properties is affirmed.[2]

Order affirmed.

BECK, J., concurred in the result.

**2.** On October 17, 1995, appellees filed a motion to dismiss appellant's appeal pursuant to Pa.R.App.P. 123 and 2101 citing numerous violations of the Pennsylvania Rules of Appellate Procedure by appellant. We decline to take such action because effective appellate review has not been precluded by the deficiencies of appellant's brief. *See O'Neill v. Checker Motors Corporation*, 389 Pa.Super. 430, 433, 567 A.2d 680, 681 (1989).