632 A.2d 1297

Dorothy KACHUR, Appellee,

v.

YUGO AMERICA, INC., and Billco Motors, Appellees,

v.

IMPEX CAR CORPORATION, Appellant.

Dorothy KACHUR, Appellee,

v.

YUGO MOTOR CORPORATION, a/k/a Zastava
Wujo Automobile, a/k/a Zavodi Crvena
Zastava, Appellee,

and

Impex Car Corporation, Appellant,

and

Billco Motors, Appellee.

Supreme Court of Pennsylvania.

Submitted March 8, 1993.

Decided Nov. 1, 1993.

Miles A. Kirshner, H.N. Rosenberg, Rosenberg, Kirshner, P.A., Pittsburgh, for appellant.

Robert J. Taylor, Ambridge, for Dorothy Kachur.

Rosemary Ploeger, JoAnne E. Kinzel, Pittsburgh, for Billco Motors.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

The question in this case is whether Pennsylvania courts have personal jurisdiction over the Appellant, Impex Car Corporation.

This consolidated appeal arises out of two actions. In No. 53 W.D. Appeal Docket 1992, Dorothy Kachur sued Billco Motors and Yugo America, Inc., in Beaver County, asserting that she was injured when the Yugo automobile she was driving struck a utility pole. The complaint alleged that the seatbelt she was wearing was defective, causing her to suffer more extensive injuries than she otherwise would have sustained. The action was transferred to Allegheny County, where Billco filed a complaint to join Impex Car Corporation as an additional defendant. The court, acting on preliminary objections, dismissed the complaint against Impex, holding that Impex was not subject to the personal jurisdiction of Pennsylvania courts.

While this matter was pending, Kachur filed a second complaint, this one naming Impex and the Yugo's manufacturer, Zastava Wujo Automobili, also known as Zavodi Crvena Zastava, as defendants along with Billco and Yugo America. Impex filed preliminary objections asserting lack of personal jurisdiction, which the court granted, citing the determination in the prior, related case. This is the matter before the Court at No. 54 W.D. Appeal Docket 1992.

In both cases, Billco appealed to Superior Court, which consolidated the appeals for disposition. Superior Court held that the common pleas court's ruling on jurisdiction was erroneous, and reversed and remanded. For the reasons that follow, we now vacate the order of the Superior Court and reinstate the orders of the court of common pleas dismissing the actions against Impex.

The statutory bases of jurisdiction over persons outside of Pennsylvania are found in 42 Pa.C.S. § 5322. The general rule, stated in subsection (a), provides for the exercise of jurisdiction over a person "who acts directly or by an agent, as to a cause of action or other matter arising from" one of ten types of conduct specified. Subsection (b) provides that

> In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

Subsection (c) further provides

> When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

Superior Court did not cite to any of the provisions of subsection (a) (indeed, the court did not cite Section 5322 at all), and we assume from the court's discussion [1] that the court analyzed the jurisdictional question solely under subsection (b). For these purposes, the statutory authority for exercising jurisdiction is co-extensive with the constitutional authority.

In recent years, the United States Supreme Court has addressed the issue of a state's exercise of personal jurisdiction over a nonresident defendant on a number of occasions, in each case restating the fundamental principles and applying them to the facts at hand. The concept of "minimum contacts" was introduced in *International Shoe Co. v. Washing-*

---

1. "We first address whether it comports with constitutional due process to require Impex to defend this suit in Pennsylvania," Slip Opinion at 10. "Next, we determine whether these contacts considered in light of other factors determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " Slip Opinion at 11.

*ton,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), where the Court stated that, consistent with the Due Process Clause of the Fourteenth Amendment, a state court may exercise jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum state.

In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court observed that the minimum contacts requirement performs two distinct but related functions: it "protects the defendant against the burdens of litigating in a distant or inconvenient forum," and it ensures that states "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.* at 292, 100 S.Ct. at 564. The first purpose, the Court indicated, is served by an analysis of the "reasonableness" or "fairness" of allowing a state court to exercise jurisdiction. Thus, "the defendant's contacts with the forum state must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice." ' " *Id.,* quoting *International Shoe Co. v. Washington,* supra, 326 U.S. at 316, 66 S.Ct. at 158 and *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). Reasonableness, in turn, requires a consideration and balancing of the interests of the plaintiff, the defendant, the forum state, and the interstate judicial system. The second purpose is served by a clear recognition of the nature of the federal system of government and the limits that system places on the power of the individual states.

The plaintiffs in *World–Wide Volkswagen* had purchased a car while residents of New York and were injured in a collision that occurred in Oklahoma while they were en route to their new residence in Arizona. Their complaint named the manufacturer of the vehicle, the importer, the regional distributor, and the retail dealer. The latter two defendants objected to the Oklahoma court's exercise of jurisdiction over them. The Supreme Court found "a total absence of those affiliating circumstances that are a necessary predicate to any exercise

of state-court jurisdiction." *Id.* 444 U.S. at 295, 100 S.Ct. at 566.

In doing so, the Court rejected the argument that because it was foreseeable that an automobile sold in New York could travel to Oklahoma and cause injury there, it would not be unreasonable to require the New York parties to defend the litigation in Oklahoma. The Court stated that " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* Although foreseeability is not "wholly irrelevant[,] . . . the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that *the defendant's conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567 (emphasis added).

The Court acknowledged that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum State," id.* at 297–98, 100 S.Ct. at 567, but found no such basis for jurisdiction where the New York based distributor and retail dealer served only the New York, New Jersey, Connecticut area. The Court further indicated that "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *Id.* at 299, 100 S.Ct. at 568.

In *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Court considered the propriety of the exercise of personal jurisdiction over a Michigan resident/franchisee by the United States District Court for the Southern District of Florida in a diversity action brought by a Florida corporation. In its summary of the applicable principles, the Court noted that "the constitutional touchstone remains whether the defendant *purposefully* established 'minimum contacts' in the forum State." *Id.* at 474, 105

S.Ct. at 2183 (emphasis added). Reiterating the "foreseeability" analysis of *World–Wide Volkswagen,* the Court identified the following language from *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958), as defining when one might "reasonably anticipate being haled into court" in another state:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which *the defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. (Emphasis added.)

The Court identified the "purposeful availment" requirement as being necessary to ensure that jurisdiction would not be based on "random," "fortuitous," or "attenuated" contacts, or on the "unilateral activity of another party or a third person." On the facts presented, the Court found it proper for the Florida court to exercise jurisdiction since the franchisee had knowingly and deliberately accepted the contractual relationship tying his Michigan operation to the corporate headquarters in Florida.[2]

 It appears from the record, including answers to interrogatories and affidavits supplied by Impex, that Impex was incorporated in New York in 1985. Since its inception, Impex has conducted business as a purchasing agent, buying certain parts from American suppliers and exporting them to Zastavaimpex, an importing agent in Belgrade, Yugoslavia, for Zavodi Crvena Zastava, the manufacturer of Yugo Automobiles. Some of the automobiles manufactured by Zavodi Crvena Zastava were later shipped to Yugo America, Inc., the exclu-

---

**2.** Recently this Court followed the *Burger King* analysis in determining that it was proper for the Beaver County Court of Common Pleas to exercise jurisdiction over an Arizona couple in an action alleging breach of warranty and fraudulent misrepresentation in connection with the sale of a residence located in that county. *Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110 (1992).

sive American importer-distributor of Yugo automobiles, for distribution and sale in the United States.

Impex conducts no business in Pennsylvania, is not registered to do business here, and has never made application to any governmental authority here for any license, permit, registration, or other authorization. It has no offices, agents, or employees in Pennsylvania, owns no property, and does not advertise or otherwise solicit business in Pennsylvania. None of the companies from which Impex buys parts for export to the Yugo manufacturer is located in Pennsylvania. Indeed, it appears that the seat belt which the complaint alleges was defective, was not one of the component parts purchased and exported by Impex.

Despite this total absence of contact with Pennsylvania, the plaintiffs argued, and Superior Court agreed, that "as the sole purchasing and shipping agent of parts acquired in the United States for installation in Yugo automobiles, Impex is part of the manufacturing and distribution chain that extends from the various parts manufacturers, to installation by the manufacturer, to the distribution and sale of Yugo automobiles in Pennsylvania." Slip Opinion at 8. The court held that there was demonstrated "a sufficient relationship between Impex and the Yugo manufacturing and distribution chain to show that it is part of the same enterprise for jurisdictional purposes." *Id.* at 11. This was error.

Although Impex serves as a purchasing agent only for the Yugo manufacturer, and the Yugo manufacturer employs no other agent for the purchase of American parts, there is no basis in law or fact for concluding that they are "part of the same enterprise." According to the answers to interrogatories and affidavits, Impex maintains an entirely separate corporate structure. It has no role in the design or manufacture of the component parts it exports or of the final product, nor does it play any part in the selection of which American parts are to be purchased for inclusion in the vehicle. Only by improperly engaging in a kind of unstated "piercing of the corporate veil" could Superior Court conclude that "Impex

purposefully established minimum contacts with Pennsylvania as part of the Yugo manufacturing and distribution chain." Slip Opinion at 11. Even if the actions of Yugo America or Zavodi Crvena Zastava might be considered to be "purposefully directed" toward Pennsylvania, those actions must be considered the "unilateral actions of a third party" which establish no relationship between Impex and Pennsylvania for purposes of jurisdiction.

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the United States Supreme Court considered the exercise of jurisdiction by the California courts over a Japanese corporation. Asahi manufactured tire valve assemblies in Japan and sold them for use in finished tire tubes to, among others, Cheng Shin Rubber Industrial Co., Ltd., a Taiwanese corporation. Cheng Shin had been named as a defendant in a product liability action filed in California by a motorcyclist who had lost control and crashed, allegedly because of a defect in the motorcycle tire, and had filed a cross-complaint against Asahi seeking indemnity.

Justice O'Connor, writing for a four member plurality of the Supreme Court, addressed the competing lines of reasoning in "cases in which the defendant acted by placing a product in the stream of commerce, and the stream eventually swept the defendant's product into the forum State, but the defendant did nothing else to purposefully avail itself of the market in the forum State." 480 U.S. at 110, 107 S.Ct. at 1031. The California court had held that "Asahi's awareness that its valves would be sold in California was sufficient to permit California to exercise jurisdiction over Asahi consistent with the requirements of the Due Process Clause." *Id.* at 111, 107 S.Ct. at 1031.

The plurality rejected this approach, stating

The 'substantial connection' ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum state.* ... Addi-

tional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112, 107 S.Ct. at 1032 (citations omitted) (emphasis in original). Although four members of the Court disagreed with this interpretation of the "stream of commerce theory," the Court was unanimous in concluding that the exercise of personal jurisdiction over the Japanese corporation would not comport with fair play and substantial justice.

In this case, Impex did not even introduce a product into the stream of commerce; it merely facilitated the movement of some products in the stream, and it had *no* relationship whatsoever to the product alleged to be defective and the cause of the injuries. For all these reasons, we find that there are not sufficient contacts between Impex and Pennsylvania to justify the exercise of jurisdiction by the Pennsylvania courts, and the assertion of jurisdiction would not comport with fair play and substantial justice.

The order of the Superior Court is vacated and the Orders of the Court of Common Pleas dismissing the actions against Impex are reinstated.