768 A.2d 1112

**Amy L. WAGNER, Appellee,**

v.

**Michael F. WAGNER, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided April 18, 2001.

450

Mary Sue Ramsden, Pittsburgh, for Michael F. Wagner.

Mark A. Criss, Cranberry Tp., for Amy L. Wagner.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

Section 1408(c)(4)(A)-(C) of the federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. §§ 1408–1412 (the "Act"), authorizes a state court to dispose of military retirement pay according to state law in a divorce proceeding, provided the court has jurisdiction over the military member.

Under the Act, jurisdiction may be premised on the member's consent. 10 U.S.C. § 1408(c)(4)(C). The question presented in this appeal is whether the Appellant, Michael F. Wagner, consented to the trial court's jurisdiction. For all the reasons that follow, we hold that he did not. Accordingly, the order of the Superior Court, reversing the trial court's order granting Appellant's preliminary objections to jurisdiction, is reversed.

Appellant and the Appellee, Amy L. Wagner, were married in Butler County, Pennsylvania on August 14, 1982. The Wagners had one child. Throughout the marriage, appellant was on active duty as an officer in the United States Air Force. The Wagners separated in 1992. Appellee returned to and now lives in Butler County. Appellant is presently stationed in New Mexico, and resides in Alaska.

On or about December 30, 1993, Appellee filed a Complaint for Support in the Court of Common Pleas of Butler County. Later, on June 24, 1994, she filed a Complaint in Divorce. Personal service of the reinstated Complaint in Divorce was effected on Appellant in Alabama on September 28, 1995. Appellant did not file an answer to the Complaint in Divorce. Appellee served Appellant with written interrogatories relating to income and expenses. Appellant did not answer Appellee's interrogatories. On February 16, 1996, Attorney Lee A. Montgomery filed a Praecipe for Appearance on Appellant's behalf in the divorce action. Thereafter, Appellant's attorney attended a hearing held by the trial court to decide whether Appellant should be held in contempt for failing to respond to Appellee's discovery. Eventually, Appellant produced credit card statements and answered Appellee's interrogatories. Appellant attended a support modification conference in connection with the separate proceeding commenced by Appellee's Complaint for Support.

In January 1998, Appellee filed an inventory, which listed Appellant's "United States Air Force Retirement" as marital property. Appellant did not file an inventory. On February 11, 1998, Appellee filed a Petition for Special Relief and for Bifurcation, requesting a schedule for pre-trial discovery, bifurcation, and a trial of economic issues. The trial court

scheduled a bifurcation hearing for May 8, 1998. Appellant filed a Motion for Stay and/or Continuance and Preliminary Objections to Pennsylvania Jurisdiction on May 4, 1998. On May 7, 1998, Appellant filed a Refusal to Accept Jurisdiction of Court to Determine the Disposable Retirement Pay of A Member of the Armed Forces.

Appellant's preliminary objections were premised on the Act, which provides that unless a court has jurisdiction over the military member by virtue of his residence, domicile or consent to the court's jurisdiction, it may not distribute the member's retirement pay. 10 U.S.C. § 1408(c)(4)(A)-(C). Appellant alleged that he did not reside and was not domiciled in Pennsylvania. He also averred that he did not consent to the trial court's jurisdiction for purposes of the Act and objected to the court's jurisdiction over his retirement pay.

The trial court sustained Appellant's preliminary objections. The court first found that § 1408(c)(4) addresses subject matter jurisdiction. Since the parties conceded that Appellant was neither a resident nor a domiciliary of the Commonwealth, the court turned to the question of Appellant's consent. Based on its conclusion that the statute speaks to subject matter jurisdiction, the court reviewed the record to determine whether Appellant had consented to its jurisdiction over the retirement pay itself. The court found that no action Appellant had taken in the case amounted to such consent. Accordingly, the court held that it did not have jurisdiction under the Act to decide the equitable distribution of Appellant's retirement pay, and granted Appellant's preliminary objections by order dated May 14, 1998.

At Appellee's request, the trial court issued an amended interlocutory order on May 29, 1998. Appellee then filed a petition for permission to appeal under 42 Pa.C.S. § 702 in Superior Court, which was granted.[1]

1. Section 702 of the Judicial Code, which governs interlocutory appeals, provides in relevant part:

(b) Interlocutory appeals by permission.-When a court....in making an interlocutory order in a matter in which its final order would be within the jurisdiction of a appellate court, shall be of the opinion

The Superior Court reversed the trial court's order. *Wagner v. Wagner*, 731 A.2d 632 (Pa.Super.1999). Like the trial court, the first question the Superior Court determined was whether § 1408(c)(4)(C)'s consent provision implicates subject matter or personal jurisdiction. In the Superior Court's view, since the residency and domicile alternatives in § 1408(c)(4)(A) and § 1408(c)(4)(B) respectively are traditional tests of personal jurisdiction, and because the legislative history of the Act shows that Congress sought to curtail a spouse's forum shopping, it was logical to conclude that the consent alternative in § 1408(c)(4)(C) is a matter of personal jurisdiction. *Id.* at 636–37.

The court then rejected Appellee's argument that Appellant's preliminary objections to jurisdiction were untimely, concluding that the question of consent for purposes of the Act is not whether the military member waived his right to object to personal jurisdiction under state procedural rules, but whether he engaged in some form of affirmative conduct that showed his express or implied consent to the trial court's general *in personam* jurisdiction. *Id.* at 637. Noting that Appellant accepted service of the Complaint in Divorce, secured counsel who entered a written appearance on his behalf, was represented by counsel at a discovery dispute hearing, complied with a discovery order, answered interrogatories, and attended an ancillary support modification conference in Butler County, the court held that Appellant had consented to the court's personal jurisdiction through his participation in the divorce proceedings. *Id.* at 637–38. The court suggested that if Appellant had avoided process, immediately filed preliminary objections to the trial court's jurisdiction or refused to participate in the action altogether, he would have succeeded in withholding his consent. *Id.* at 638.

that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate disposition of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such an order.

42 Pa.C.S. § 702.

Finally, because its holding meant that all issues between the parties would be determined at once and in one forum, the court believed that the result it reached comported with public policy and principles of judicial economy. *Id.*

■ We begin our analysis with a brief background of the federal statute that we are called upon to construe in this case.[2] Congress first enacted comprehensive nondisability military retirement legislation during the Civil War, with the aim of securing a youthful military force, providing for retired members, and encouraging service. In 1981, in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court concluded that the application of California's community property to military retirement benefits conflicted with this legislation, and threatened the attainment of these goals. *Id.* at 232–35, 101 S.Ct. 2728. Based on its examination of federal law dealing with military benefits, the Court found that Congress intended retirement pay to be a military member's personal entitlement, not subject to division between him and his spouse. *Id.* at 224, 232, 101 S.Ct. 2728. The Court further found that application of state community property law to the pension would make it less valuable, and in turn, render military service less attractive. *Id.* at 234, 101 S.Ct. 2728. Consequently, the Court held that federal law prohibits a state court from dividing a serviceperson's retirement pay pursuant to state community property statutes upon the dissolution of a marriage. *Id.* at 232–35, 101 S.Ct. 2728. In closing, however, the Court observed that the plight of ex-spouses of retired military members is often a serious one and invited Congress to consider whether they should be afforded more protection. *Id.* at 235–36, 101 S.Ct. 2728.

Congress responded to *McCarty* with the Act. The statute gives state courts the express authority to distribute military

2. As the proper construction of the Act implicates a pure question of law, the scope of our review is plenary, *Phillips v. A-Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995), and our standard of review is limited to determining whether the Superior Court erred as a matter of law. *See Stone and Edwards Ins. Agency, Inc. v. Com., Dept. of Ins.,* 538 Pa. 276, 648 A.2d 304, 307 n. 2 (1994).

retirement pay in a domestic relations action, 10 U.S.C. § 1408(c)(1), and includes a mechanism by which a court order fixing the amount to which the spouse or former spouse of a military member is entitled can be served upon and satisfied directly by the federal government. 10 U.S.C. §§ 1408(a)(2), (d). Under § 1408(c)(4), however, the court's authority to distribute military retirement pay depends on its having "jurisdiction over the member", which may be acquired in three alternative ways. Section 1408(c)(1) and § 1408(c)(4) state:

§ 1408. Payment of retired or retainer pay in compliance with court orders

\* \* \*

(c) Authority for court to treat retired pay as property of the member and spouse.—(1) Subject to the limitations of this section, a court may treat the disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. . . .

(4) *A court may not treat the disposable retired pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of* (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or *(C) his consent to the jurisdiction of the court.*

10 U.S.C. 1408(c)(1), (4) (emphasis added).

■ As a preliminary matter, we observe that under the United States Supreme Court's holding in *McCarty* and because the Act is federal legislation, federal principles, rather than Pennsylvania law, control the statute's construction. As in any statutory construction case, our goal is to ascertain and effectuate the intent of Congress. *Negonsott v. Samuels,* 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). This process begins with the language of the statute. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). In ascertaining

the meaning of a particular statutory provision, we "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (citations omitted). We are instructed that "[a] few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, excepting as a different purpose is plainly shown." *United States v. American Trucking Ass'ns,* 310 U.S. 534, 544, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (citations omitted). We may presume that Congress is aware of the law, *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 185–86, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988), and did not intend a result that is unjust, absurd or unreasonable. *Webster v. Reproductive Health Servs.,* 492 U.S. 490, 515, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989).

Our starting point in construing § 1408(c)(4)(C) is the issue that was central to the lower courts' respective decisions-does the statute speak to subject matter jurisdiction, as the trial court held, or does it address *in personam* jurisdiction, as the Superior Court determined. Because a court must have subject matter, as well as personal, jurisdiction to adjudicate a military member's rights to his pension and issue orders that bind him, *see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinea,* 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), Congress covered both in the Act. In 10 U.S.C. § 1408(a)(1)(A), Congress allows "courts of competent jurisdiction" to partition retirement pay "in accordance with the law of the jurisdiction of such court". 10 U.S.C. § 1408(c)(1). That is to say, the Act authorizes action by those state courts that already have subject matter jurisdiction and substantive law authority under pertinent state law. Thus, Congress did not grant subject matter jurisdiction to any court over a military pension in § 1408(c)(4), or elsewhere in the Act. *Steel v. United States,* 813 F.2d 1545, 1548 (9th Cir.1987)("[The Act] does not create jurisdiction, but grants power to courts once they have jurisdiction"); *Brown v. Harms,* 863 F.Supp. 278, 280–81 (E.D.Va.1994). It necessarily

follows and we conclude, therefore, that § 1408(c)(4) refers to personal jurisdiction. For this, however, Congress chose not to use state law. Instead, it usurped state long-arm statutes and provided in § 1408(c)(4)(A)-(C) its own tests of personal jurisdiction that all state courts must apply.

Our next inquiry lies at the heart of this case-to what does § 1408(c)(4)(C) require consent. Once the Superior Court characterized § 1408(c)(4)(C) as a personal jurisdiction provision, it assumed that the statute meant consent to the court's personal jurisdiction in a divorce proceeding for all purposes. The court did not allow for the possibility that § 1408(c)(4)(C) is more limited, and refers to a military serviceperson's consent to the court's authority over him to distribute his pension. It is this possibility that we now address.

In order to determine Congress' intent in this regard, it is helpful to remember that Congress views domestic relations as virtually the exclusive province of the states, and as an area in which it is reluctant to intrude. *Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). It is also important to remember that the authority granted to state courts in the family law context in which § 1408(c)(4)(C) operates is comprehensive. In divorce actions, state courts are empowered to decide a variety of matters; they dissolve marriages, resolve property rights, and determine issues of child custody, alimony and support. *See, e.g.*, 23 Pa.C.S. § 3104(a)(1)-(5). Many state courts, including those in Pennsylvania, have the power to determine property rights, even after a marriage has been dissolved in another forum. 23 Pa.C.S. § 3104(d); *Cheng v. Cheng*, 347 Pa.Super. 515, 500 A.2d 1175 (1985).

 Likewise, in this area, the rules that apply to the courts' authority over a person, including a military member, to render valid judgments are far-reaching. In Pennsylvania and elsewhere in the nation, courts may issue a divorce decree *ex parte*, as long as the plaintiff satisfies a residency requirement and serves the complaint. 23 Pa.C.S. § 3104(b); Pa. R.C.P.1920.4; *see Williams v. North Carolina*, 317 U.S. 287,

297–99, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Typically, where a defendant is subject to a state's long-arm statute and has sufficient contacts with that state, his rights in the matters ancillary to divorce may be determined by its courts. *See Kulko v. California*, 436 U.S. 84, 91–92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Very often, once a court obtains personal jurisdiction over a defendant in the initial divorce action, it is empowered to bind him by subsequent orders over connected matters, including the partition of marital assets. *See, e.g., White v. White*, 543 So.2d 126, 128 (La.App.1989).

By contrast and in keeping with the federal policy to keep federal intrusion into the area of domestic relations at a minimum, the Act controls the authority that state family law courts have over a single item, military retirement pay. The Act represents "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations", *Mansell v. Mansell*, 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), for the limited purpose of overriding the preemptive effect of federal law on the disposition in divorce actions of military pensions. In the Act, Congress did not purport to regulate any other of the several issues that may arise in a military member's divorce nor did it purport to speak to a member's conduct in litigation with regard to any issue but the retirement pay. Section 1408(c)(4) preempts state long-arm statutes only in connection with a court's authority to determine a military member's retirement pay, and leaves all other rules by which state courts acquire personal jurisdiction over a military member for divorce and ancillary economic issues untouched. By its terms, § 1408(c)(4)(C) reflects Congress' narrow aim. While the reference to jurisdiction in § 1408(c)(4)(C) is unqualified, § 1408(c)(4)(C) contains a reference to § 1408(c)(1)'s specific focus on the retirement pay. Reading the language of § 1408(c)(4)(C) in context and consistently with the Act's scope and object, we believe that Congress intended for the consent requirement in § 1408(c)(4)(C) to relate, like the rest of the Act, specifically to a military member's pension.

Indeed, to determine otherwise, as did the Superior Court, would run counter to Congress' purpose. The right to consent in § 1408(c)(4)(C) carries with it, of course, the right not to consent. Under the Superior Court's construction of the statute, a military member who seeks § 1408(c)(4)(C)'s protection should withhold his consent to the trial court's personal jurisdiction in general. Taken to its logical conclusion, however, the Superior Court's construction would mean that Congress gave a military member, who succeeds in withholding his consent under the statute, the power to veto the personal jurisdiction a court might otherwise have to dissolve a marriage or to determine the various matters, including the partition of other marital assets, that divorce actions raise. Given the federal principle that family law is preeminently a local matter and the limited focus of the Act, this simply cannot be the case.

Further, the Superior Court's construction is unworkable. In its opinion, the Superior Court suggested that a military member who does not consent under § 1408(c) to the trial court's authority to distribute his retirement pay should file preliminary objections to the court's personal jurisdiction. Typically, however, he will be subject to the court's personal jurisdiction, no matter what he files or states. Thus, a general assertion that withholds consent to the court's personal jurisdiction would be legally meaningless on its face. In this context then, the assertion that has legal meaning is one (like the assertion made by Appellant) that withholds consent specifically to the court's jurisdiction with respect to the retirement pay.

Finally, the alternative suggestions the Superior Court gave to a military member to insure against a finding of consent under the statute—refuse service or make no appearance—are ill-advised. They encourage a military member to flout process and force upon him an unreasonable choice between participating in and remaining absent from important judicial proceedings.

■ Thus, we conclude that under § 1408(c)(4)(C), the Pennsylvania courts may not exercise the authority they are provided in the Act to distribute a military member's retirement pay in a divorce action, unless the member consents to the court's jurisdiction over his person specifically to distribute the retirement pay.

Next, we turn to the issue of waiver. Appellee urges us, as she did the Superior Court, to find that Appellant waived his right to object to the court's personal jurisdiction by filing preliminary objections on May 4, 1998, and not in 1995, when served with the Complaint in Divorce. The Superior Court rejected this argument, of the view that waiver is inapplicable in § 1408(c)(4)(C) cases. While we agree with the Superior Court's result, we do not paint with as broad a brush.

■ The requirement of personal jurisdiction flows from the Due Process Clause and restricts judicial power as a matter of individual right. *Insurance Corp. of Ireland, Ltd.,* 456 U.S. at 702–03, 102 S.Ct. 2099. A party may insist that the right be observed or he may waive it. *Id.* at 703, 102 S.Ct. 2099. Personal jurisdiction, like other individual rights, is often the subject of procedural rules. *Id.* at 705, 102 S.Ct. 2099. Frequently, when the rules that govern personal jurisdiction are not followed, the right is lost. *Id.* Thus, the failure to file a timely objection to personal jurisdiction constitutes, under the Federal Rules of Civil Procedure and comparable state rules, a waiver of the objection. *See id.*

■ These are time-honored rules. We can find nothing in the Act that would lead us to believe that the requirement of personal jurisdiction covered in § 1408(c)(4)(C) is not subject to them. Nor do we discern any intent on Congress' part to preclude the application of the doctrine of waiver to the statute. We will, therefore, address the merits of Appellee's contention. Appellee correctly states that under the Pennsylvania Rules of Civil Procedure, an objection to personal jurisdiction may be waived, if preliminary objections to a complaint raising the issue are not filed within twenty days after service. Pa.R.C.P.1026, 1028, 1032(a).

To hold Appellant to this time frame, however, is not appropriate under the circumstances, and given the realities of family law, where divorce and economic issues are often determined separately and the parties often choose to settle their respective rights to marital property themselves. *See* 23 Pa.C.S. §§ 3105, 3323(c).[3] Appellee filed a short-form Complaint in Divorce. It contained: identifying information for each party; referred to the parties' August, 14, 1982 marriage; set forth the statutory grounds for divorce; and alleged that no prior action for divorce or annulment had been filed, that the marriage was irretrievably broken and that the action was not collusive. Six general areas were marked as "[o]ther matters claimed", including "Property Rights Between Spouses." The complaint requested that the court issue a divorce decree and determine the other matters. It did not expressly refer to or even allude to any of the marital property, including appellant's military retirement pay, that the court was to distribute.

In this case, Appellant did not contest the court's personal jurisdiction to resolve the parties' property rights in general. Indeed, Appellee pursued discovery related to, and the trial court proceeded with, such matters. More than two years after the Complaint in Divorce was served, Appellee filed an inventory of marital assets listing Appellant's military pension and requested bifurcation of the divorce and the equitable

---

**3.** It bears repeating that "[i]n promulgating the rules on preliminary objections, it was the intention of this Court to reduce the number of dilatory steps taken by a defendant before filing an answer [to the complaint]." *Vant v. Gish*, 412 Pa. 359, 194 A.2d 522, 527 (1963). Although Pa.R.Civ.P.1026 provides that every pleading subsequent of the complaint "shall" be filed within twenty days after service of the preceding pleading, we have instructed that the word "shall" in the Rule is not "so mandatory as not to permit exceptions where justice requires." *Fisher v. Hill*, 368 Pa. 53, 81 A.2d 860, 862–63 (1951). We have also emphasized that Pa.R.Civ.P.126 provides that the Pennsylvania Rules of Civil Procedure are to be "liberally construed to secure the just, speedy and inexpensive determination of every action....."; that a court may disregard any error or defect of procedure which does not affect the substantial rights of the parties; and that the Rules are to be " 'interpreted with common sense to carry out the purposes for which they were adopted.' " *Id.* at 863 (*quoting Usner v. Duersmith*, 346 Pa. 494 31 A.2d 149, 150 (1943)).

distribution of marital property. It was at this point that Appellant raised his objection to the court's jurisdiction to distribute his retirement pay, having received notice that the trial court would determine his rights to that particular asset. In light of our construction of the Act, and considering the course this litigation took, we decline to find that Appellant's failure to file preliminary objections to the Complaint in Divorce, specifically withholding his consent to the court's distribution of the pay, was a waiver of his right to object to the court's jurisdiction under § 1408(c)(4)(C).

■■■■ It remains to determine whether Appellant consented to the trial court's authority to distribute the retirement pay. It is well-settled that a party may either expressly or impliedly consent to a court's personal jurisdiction. *Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 702–05, 102 S.Ct. 2099. In other words, a party may affirmatively state his consent or take such steps or seek such relief that manifest his submission to the court's jurisdiction over his person. *Id.* It is evident from the record that none of the actions Appellant took constituted consent as we have defined it. Appellant's acceptance of service, his counsel's written general appearance, his participation in discovery matters unrelated to the pay, and his attendance at a separate support proceeding do not suffice. The only activity on Appellant's part which concerned his pay was the filing of preliminary objections to the trial court's jurisdiction and the refusal to consent. We conclude, therefore, that the trial court lacks personal jurisdiction over Appellant under § 1408(c)(4)(C) to distribute his military pension.

Accordingly, we reverse the order of the Superior Court, reversing the order of the trial court granting Appellant's preliminary objections, and remand the case for further proceedings consistent with this opinion.

Madame Justice Newman did not participate in the consideration or decision of this opinion.

SAYLOR, Justice, Concurring.

I join the majority's disposition, but note my agreement with those courts which have concluded that Section 1408(c)(4), 10 U.S.C., although couched in terms of jurisdiction over the military member, operates as a limitation upon the subject matter jurisdiction of state courts over the pension of a military member. *See, e.g., Steel v. United States,* 813 F.2d 1545 (9th Cir.1987); *Delrie v. Harris,* 962 F.Supp. 931, 934 (W.D.La.1997); *Sola v. Bidwell,* 980 S.W.2d 60, 66 (Mo.App. 1998); *In re Akins,* 932 P.2d 863, 866 (Colo.App.1992). *See generally* Kristine D. Kuenzli, *Uniformed Services Former Spouses' Protection Act: Is There Too Much Protection for the Former Spouse?,* 47 A.F.L.REV. 1, 18 (1999)(stating that "[w]hen Congress enacted the USFSPA, it limited the subject matter jurisdiction of state courts over military retirement pay to those instances in which personal jurisdiction existed over the military member [according to a series of jurisdictional requirements]"). This conclusion derives from the fact that Section 1408(c) is itself the source of the state court's substantive jurisdiction over the subject matter (military pensions); the express limitations which are prescribed, therefore, are most appropriately construed as circumscribing the subject matter jurisdiction which is conferred, in absence of evidence of some contrary legislative intent. Thus, as stated by one court,

> Congress has in effect both permitted state courts to consider what status to accord military pensions in the context of dissolution proceedings and prescribed the manner by which personal jurisdiction must be obtained over the military member who is a party to such proceedings before they may apply the substantive laws of their states to that particular asset.

*In re Booker,* 833 P.2d 734, 739 (Colo.1992).

Viewed as such, waiver principles are inapplicable to the jurisdictional inquiry as defined under Section 1408(c)(4). *Accord Akins,* 932 P.2d at 867 (stating that "[t]he question whether a trial court acquires jurisdiction over a military member's pension is governed not by state rules of in-person-

am jurisdiction or procedure, but rather by the specific terms of the USFSPA"). Therefore, in cases in which a military member neither resides nor is domiciled within the territorial jurisdiction of the state court, the primary jurisdictional question becomes whether the military member has consented to the court's jurisdiction pursuant to Section 1408(c)(4)(C). *See generally id.* at 867.

Concerning this issue, it has been noted that "courts are split over whether specific consent is necessary or whether a general implied consent can be used to confer jurisdiction." Mark E. Sullivan, *Military Pension Division: Crossing the Minefield,* 31 FAM.L.Q. 19, 30 (Spr.1997). While many jurisdictions deem a general appearance sufficient to constitute consent to the court's jurisdiction, *see id.* (citing cases); Kuenzli, *Uniformed Services,* 47 A.F.L.REV. at 19 (same), I agree with the majority's interpretation that, in employing the concept of consent to the state court's jurisdiction with an eye toward affording a degree of protection in favor of military members against forum shopping on the part of non-member spouses, *see generally Akins,* 932 P.2d at 867, Congress more likely envisioned something more than the entry of appearance by counsel to defend against discovery in a divorce action. *Accord id.* at 867–68 (stating that "the statutory language [of Section 1408(c)(4) ] requires some form of affirmative conduct demonstrating express or implied consent to general in-personam jurisdiction"); *Booker,* 833 P.2d at 740 (citing cases). *Cf. generally Flora v. Flora,* 603 A.2d 723, 725 (R.I.1992) (stating that "[w]e do not find a sufficient basis, in the legislative history of the USFSPA or in the case law, to persuade us that implied consent can meet the consent requirements of § 1408(c)(4)").

In summary, I join the majority's reasoning with respect to the question of whether Husband/Appellant consented to the common pleas court's jurisdiction for purposes of Section 1408(c)(4)(C). With respect to the remaining legal issues involved, I find the rationale of the common pleas court, the Honorable George H. Hancher, to be correct and would incorporate it here.

CASTILLE, Dissenting.

I agree with the majority that subsections 1408(c)(4)(A)-(C) of the Uniformed Services Former Spouses' Protection Act ("the Act") pertain to *in personam* jurisdiction rather than subject matter jurisdiction. I agree further that the consent requirement of subsection 1408(c)(4)(C), like the rest of the Act, specifically relates to the military spouse's retirement pension. I disagree, however, with the majority's conclusion that appellant did not consent to the Commonwealth's jurisdiction over his military retirement pension. Therefore, I respectfully dissent.

The pertinent part of the Act provides that a court may not equitably distribute a serviceperson's military retirement pension unless the court has jurisdiction over the person by reason of: 1) his residence, other than as a result of military assignment, in the territorial jurisdiction of the court; 2) his domicile in the territorial jurisdiction of the court; or 3) his consent to the jurisdiction of the court. 10 U.S.C. § 1408(c)(4)(C).

As noted by the majority, the Act does not specifically define the type of jurisdiction a state court must acquire before it can distribute a military member's retirement pension; however, since subsection (A) (concerning residency) and subsection (B) (concerning domicile) are traditional tests of personal jurisdiction, it logically follows that subsection (C) (concerning consent) also pertains to *in personam* jurisdiction. Thus, a state court may equitably distribute a serviceperson's military retirement pension only if it has personal jurisdiction over the serviceperson either through his residency, domicile, or consent.

The parties here agree that appellant is neither a resident nor domiciliary of the Commonwealth of Pennsylvania; therefore, jurisdiction required appellant's consent. There are a variety of ways a litigant may give express or implied consent to the court's personal jurisdiction. One such method of implied consent is through minimum contacts. *See International Shoe Co. v. State of Wash., Office of Unemployment*

*Compensation and Placement,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also, Allen v. Allen,* 484 So.2d 269 (La.Ct.App.1986) (the Act does not require express consent).

The purpose of the minimum contacts test is to protect a defendant from having to litigate a matter in some distant forum, unless the defendant's contacts with the forum make it appropriate to force him to defend there. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The defendant's contacts should be such that "he should reasonably anticipate being haled" into the forum. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kachur v. Yugo America, Inc.,* 534 Pa. 316, 632 A.2d 1297 (1993). In this case, I believe that appellant's minimum contacts with Butler County were sufficient to establish personal jurisdiction.

As reflected in the record, appellant accepted personal service of the reinstated divorce complaint, while stationed in Alabama. The divorce complaint did not specifically mention appellant's military retirement pension; however, it did serve to place him on notice that his wife planned to seek equitable distribution of all their martial assets. *See Allen, supra* (military spouse, by answering divorce petition filed by wife in Louisiana, waived all objections to jurisdiction of Louisiana courts, and such waiver was sufficient to give court jurisdiction over wife's subsequent petition to partition community property, including share of husband's military retirement pay). Appellant then obtained counsel, who entered an appearance on his behalf in Butler County. While the entry of a written appearance alone does not constitute a waiver of the right to challenge the court's jurisdiction, such activity is inconsistent with the intent to object to jurisdiction over the military retirement pension. *See* Pa.R.C.P. 1012(a); *see also In re Booker,* 833 P.2d 734, 740 (Colo.1992).

Moreover, appellant, through his attorney, participated in numerous hearings regarding discovery disputes, complied with discovery orders setting sanctions of counsel fees and answered his wife's first set of interrogatories. Appellant

even made a personal appearance at an ancillary support modification conference in Butler County.

For almost three years, appellant participated, without objection, while the Butler County courts adjudicated the dissolution of the parties' marriage. It was not until four days prior to the bifurcation hearing that appellant objected to the court's jurisdiction over his military retirement pension. As the Superior Court noted, if appellant had wanted to object to Pennsylvania jurisdiction over his military retirement pension, he could have immediately filed a preliminary objection raising the question of personal jurisdiction concerning his pension. *See, e.g. Seeley v. Seeley*, 690 S.W.2d 626 (Tex.App.1985) (husband, who was professional soldier stationed in Germany, waived his special appearance and made general appearance in divorce proceeding by allowing trial to proceed without first obtaining ruling on his special appearance motion; thus, husband consented to jurisdiction and satisfied requirements of § 1408(c)(4), allowing the trial court to award wife a percentage of husband's military retirement pension).

Instead, appellant argued that, although he generally consented to the divorce proceeding, the court lacked the specific jurisdiction to divide his military retirement pension because he did not specifically agree to it. Contrary to the majority's finding, I find that argument not supported by the clear language of the statute. Subsection 1408(c)(4)(C) only requires consent to the jurisdiction of the court, not consent to the court's authority to divide the pension. Had Congress intended *specific* consent for the military retirement pension to become subject to a court proceeding, it would have drafted the statute to do so. As it is, the statute curtails "forum shopping" by the nonmilitary spouse but does not confer absolute "veto power" to the military spouse. If it did, the military member could always invoke the jurisdiction of a court on matters ancillary to the divorce, such as visitation, custody, etc., but then refuse to give consent as to division of the military retirement pension. That surely was not the intent of Congress. Furthermore, there was no evidence of forum shopping here by the military member's spouse.

Appellant's contacts with Butler County lead inescapably to the conclusion that he submitted himself to the jurisdiction of Butler County to adjudicate his divorce, notwithstanding that he later objected to the state's jurisdiction to handle the narrow question of *in personam* jurisdiction over his military retirement pension. As such, I would find that appellant had sufficient minimum contacts with the Commonwealth to establish his consent to the court's jurisdiction, thereby allowing the trial court to equitably distribute his military retirement pension pursuant to the Act. It would defy logic to have this appellee/wife go through support proceedings and divorce proceedings in Pennsylvania but have to invoke the jurisdiction of a court located wherever appellant's residence or domicile happens to be, assuming that it would even be in the United States, in order to reach the military retirement pension. Therefore, I respectfully dissent.