J-S34004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF: | : | IN THE SUPERIOR COURT OF |
| L.E.K. | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.E.K. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 576 WDA 2022 |

Appeal from the Decree Entered April 18, 2022
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s): 2022-00008

BEFORE: DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED: NOVEMBER 16, 2022**

Appellant, L.E.K., appeals from the April 18, 2022 Order entered in the Bedford County Court of Common Pleas that adjudicated him incapacitated and appointed a plenary guardian of his person and estate. Appellant challenges, *inter alia*, the sufficiency of the evidence. Upon review, we affirm.

Appellant is 65 years old and has been diagnosed with Parkinson's Disease. Appellant lives by himself and, until recently, was receiving home services from the Huntington-Bedford-Fulton Area Agency on Aging ("the Agency"). In the summer of 2021, Appellant was hospitalized after several episodes where he displayed "paranoid delusional" behavior and contacted state police concerned that someone was robbing him. N.T. Hearing, 4/14/22, at 19. Appellant was admitted to Maybrook Hills Nursing Facility. On February

_____

[*] Retired Senior Judge assigned to the Superior Court.

8, 2022, the Agency filed a Petition for Adjudication of Incapacity and Appointment of Plenary Guardian after receiving information from in-home service providers that it was not safe to send Appellant home, as well as a written statement on January 5, 2022, from Appellant's treating physician, Dr. Carl Werne, stating that he would testify to Appellant's incompetence. In the petition, the Agency alleged that Appellant suffers from Parkinson's Disease and altered mental status, which cause him to need significant support in his daily living, including twenty-four-hour care and supervision. The Agency also attached Dr. Werne's written statement. On February 9, 2022, the trial court appointed Karen S. Hendershot, Esquire, to represent Appellant. On March 29, 2022, and March 30, 2022, Catherine S. Spayd, Ph.D., P.C., conducted a psychological evaluation of Appellant.

On April 14, 2022, the trial court held a guardianship hearing. Appellant was present at the hearing with Attorney Hendershot. The trial court heard testimony from Dr. Spayd and Jim Rose, co-manager of the Agency.

In sum, Dr. Spayd testified as an expert in ascertaining a patient's current level of cognitive functioning. She explained that she meets with patients for two separate sessions to get a better clinical sample of behavior, and to account for instances where a patient is simply having a bad day. Dr. Spayd explained that she conducted a clinical interview, obtained background information from the Agency, and reviewed Appellant's medications and diagnoses.

Dr. Spayd also conducted various tests to measure Appellant's cognitive functioning, including the Folstein Mini Mental State Examination; Mattis Dementia Rating Scare; Trail Making Test that measures attention and mental flexibility and sequencing; California Verbal Learning Test that measures verbal recall and learning; Boston Naming Test that measures naming abilities; F-A-S Verbal Fluency Test; Boston Diagnostic Aphasia Evaluation Complex Ideation sub-test; Wechsler Adult Cognitive Scale; and a Clock Drawing Test that measures non-verbal problem-solving skills.

Dr. Spayd testified that Appellant demonstrated average functioning in various areas but had average to severely impaired attention; mildly clinically impaired non-verbal problem solving and verbal initiation skills; moderate impairment in the areas of receptive language; and moderate to severely impaired abstraction and mental flexibility and sequencing ability. Dr. Spayd testified that she diagnosed Appellant with dementia secondary to his Parkinson's Disease and concluded:

> [Appellant] is unable to make effective life decisions on his own due to cognitive deficits. And, therefore, because he had not established power of attorney [] previously, a plenary guardianship would be clinically indicated. . . Due to his cognitive deficits, I recommend twenty-four-hour supervision and assistance with his daily care.

N.T. Hearing at 12. Finally, Dr. Spayd explained that "a Parkinson's based dementia presents differently than, for example, Alzheimer's based dementia, which tends to be more apparent to the casual observer. . . . So on a basic level to [a] observer, yes, I think he would appear mostly intact." *Id.* at 15.

In her expert report, which the Agency entered into evidence, Dr. Spayd made the following relevant treatment recommendations:

> 2. Given his currently identified moderate level of neuro-cognitive disorder, [Appellant] is assessed to currently be incapable of making good life decisions. Specifically, test results suggest he is currently unable to consistently attend to, to recall, or to effectively comprehend information needed to make important life decisions, to effectively problem solve or to think abstractly regarding such decisions, nor to initiate action upon them. Because the patient has not previously established [Power of Attorney] documents, plenary guardianship of both person and estate is thus clinically indicated at this time.
>
> 3. Given the current severity level of [Appellant]'s identified cognitive deficits, 24-hour supervision of and assistance with his daily activities are clinically indicated at this time, to assure he accurately takes medications, completes medical appointments and procedures, receives consistent nutrition, safely manages appliances, is protected financially from potential designing persons, and can be assisted in possible emergency situations. This level of care could be provided by 24-hour caregivers in his home, or by continued placement in a long-term residential setting.

Petitioner's Ex. 1, Psychological Evaluation, at 6.

Mr. Rose, who has been employed by the Agency for six years and working with Appellant since August 2021, testified to the above events. Additionally, Mr. Rose testified that Appellant "needs maximum assistance for his medications" and the assistance of one or two individuals to perform daily activities. N.T. Hearing at 22. Mr. Rose stated that Appellant is "taking care of his own finances" and "deals with a credit union in California." *Id.* at 23. Finally, Mr. Rose testified that he has helped Appellant with some minor financial issues, but Appellant has "tried to stay diligent in trying to pay taxes.

He even called at the beginning of the year to get certified checks to try to pay his local taxes." *Id.* at 24. Mr. Rose was unaware if the taxes were actually paid.

At the conclusion of the hearing, the trial court adjudicated Appellant incapacitated and appointed a plenary guardian of his person and estate.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the lower court have jurisdiction of the person of the alleged incapacitated person?

2. Was there presentation of clear and convincing evidence sufficient for a finding that the ability of the alleged incapacitated person to receive and evaluate information effectively and communicate decisions in any way was impaired to such a significant extent that he was totally unable to manage his financial resources or to meet essential requirements for his physical health and safety?

3. Did various shortcomings in the proceedings deny the alleged incapacitated person his basic rights to due process of law?

Appellant's Br. at 5.

## A.

It is well-settled that "[t]he findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support." *In re Jackson*, 174 A.3d 14, 23 (Pa. Super. 2017) (citation omitted). "This rule is

particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony." *Id.* (citation omitted). This Court's "task is to ensure that the record is free from legal error and to determine if the [o]rphans' [c]ourt's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence." *Id.* (citation omitted)

Consequently, "[o]ur review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing, of course, that the trial court had the opportunity to observe all of the witnesses, including, as here, the allegedly incapacitated person." *In re Hyman*, 811 A.2d 605, 608 (Pa. Super. 2002). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000). Notably, for an appellant to establish an abuse of discretion, it "is not sufficient to persuade the appellate court that it might have reached a different conclusion under the same factual situation." *Fancsali v. Univ. Health Ctr. of Pittsburgh*, 761 A.2d 1159, 1162 (Pa. 2000).

Under Pennsylvania law, an incapacitated person is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially

or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501. "The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate." 20 Pa.C.S. § 5511(a). A person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence. *In Re Myers' Estate*, 150 A.2d 525, 526 (Pa. 1959). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation and internal quotation marks omitted).

Further, when making a determination of incapacity, the court shall consider and make specific findings of fact concerning:

(1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.

(2) The extent of the individual's capacity to make and communicate decisions.

(3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

- 7 -

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship.

20 Pa.C.S. § 5512.1(a).

**B.**

In his first issue, Appellant avers, for the first time on appeal, that the trial court did not have personal jurisdiction over him. Appellant's Br. at 10. Appellant argues that the record is devoid of evidence that the Agency personally served the adjudication of incapacity petition on Appellant as required by 20 Pa.C.S. § 5511(a) and Pa.O.C. Rule 14.2(f), which both require written notice of the petition and hearing to be personally served on the alleged incapacitated person at least 20 days before the hearing. *Id.* Appellant also argues that the Agency failed to present the citation and proof of service at the hearing as required by Pa.O.C. Rule 14.6(a). *Id.* Therefore, Appellant contends, the trial court never had jurisdiction of his person and the final decree is void for lack of jurisdiction. Upon review, Appellant has waived these challenges.

"Personal jurisdiction is a court's power to bring a person into its adjudicative process." *Grimm v. Grimm*, 149 A.3d 77, 83 (Pa. Super. 2016) (internal quotation marks and citation omitted). "Jurisdiction of the person may be obtained through consent, waiver or proper service of process." *Fleehr v. Mummert*, 857 A.2d 683, 685 (Pa. Super. 2004). One can waive service of process by various means, including a voluntary appearance in court. *Id. See also Hicks' Estate*, 199 A.2d 283, 285 (Pa. 1964) (explaining

that a court cannot establish personal jurisdiction "[u]nless the court has the parties before it, by appearance or service of process"). A party demonstrates an intent to submit to the court's jurisdiction when the party takes some action pertaining to the merits of the case, thus evidencing an intent to forego objection to any defective service. **Fleehr**, 857 A.2d at 685.

Furthermore, it is axiomatic that issues which are not raised in the trial court are waived and cannot be raised for the first time on appeal to this Court. Pa.R.A.P. 302(a). The failure to challenge personal jurisdiction constitutes waiver of that defense. **Wagner v. Wagner**, 768 A.2d 1112, 1119 (Pa. 2001). "This Court has long held that questions of personal jurisdiction must be raised at the first reasonable opportunity or they are lost." **Manack v. Sandlin**, 812 A.2d 676, 683 (Pa. Super. 2002)

Instantly, Appellant appeared in court and participated in the hearing, thereby waiving any objection to personal jurisdiction. Additionally, Appellant failed to raise any challenge regarding personal jurisdiction, service of process, or compliance with Section 5511 or Rules 14.2 and 14.6 at the trial court level. Accordingly, Appellant has failed to preserve these challenges for our review.[1]

---

[1] Appellant also argues, for the first time in his brief, that the Agency failed to comply with the jurisdictional procedural provisions of the Probate, Estates, and Fiduciaries Code, specifically 20 Pa.C.S. §§ 764-766, which, *inter alia*, require a party in interest to obtain personal jurisdiction by serving a citation. Appellant's Br. at 14. Appellant failed to include this challenge in his Rule 1925(b) statement and, thus, failed to preserve this issue for our review. **See** *(Footnote Continued Next Page)*

## C.

In his second issue, Appellant avers that the Agency did not present clear and convincing evidence that Appellant was totally incapacitated and that the appointment of a plenary guardian of his person and estate was the least restrictive alternative. Appellant's Br. at 19. Appellant argues that Dr. Spayd's testimony "leaps from a factual predicate of findings of moderate to severe impairment in **some** cognitive domains to a conclusion that plenary guardianship of both person and estate is the only clinically indicated result." *Id.* at 23 (emphasis added). Additionally, Appellant argues that the trial court should have considered Mr. Rose's testimony that Appellant was able to take care of his own finances. *Id.* at 21. Essentially, Appellant is challenging the weight of the evidence.

Instantly, the trial court placed little weight on Mr. Rose's testimony that Appellant was able to contact his credit union and had tried to pay his taxes, emphasizing that "it is unknown whether those taxes were paid," and placed greater weight on Dr. Spayd's uncontradicted expert testimony and report. Trial Ct. Op., filed 6/13/22, at 18-19. The trial court emphasized Dr. Spayd's

_____

Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived"). Moreover, as discussed above, Appellant waived any challenge to personal jurisdiction when he appeared in court and participated in the hearing.

Appellant further argues, for the first time in his brief, that it is unclear whether the trial court appointed Attorney Hendershot to serve as a guardian *ad litem* ("GAL"), an attorney, or both. Appellant's Br. at 15-18. Appellant likewise failed to include this issue in his Rule 1925(b) statement and the issue is, thus, waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

- 10 -

conclusions in her expert report that Appellant is "currently unable to consistently attend to, to recall, or to effectively comprehend information needed to make important life decisions [or] to initiate action upon them." *Id.* at 19 (quoting Petitioner's Ex. 1, Psychological Report, at 6.)

Moreover, the trial court credited Dr. Spayd's uncontradicted expert testimony that Appellant is suffering from dementia secondary to Parkinson's Disease and her expert opinion that Appellant needs a plenary guardian of his person and estate. The trial court opined:

> Based upon the expert testimony of Dr. Spayd, as well as the written report entered as evidence at the hearing, this [c]ourt found by clear and convincing evidence, that [Appellant] suffers from a condition that totally impairs his capacity to receive and evaluate information effectively and to make and communicate decisions concerning his management of financial affairs or to meet essential requirements for his physical health and safety. As there were no family members or friends who were willing to serve as plenary guardian of the person and estate of [Appellant].

*Id.* at 18. The trial court's findings are supported in the record. We decline to usurp the trial court's credibility determinations or reweigh the evidence. Accordingly, we find no abuse of discretion.

**D.**

In his third and final issue, Appellant avers that various shortcomings in the proceedings amounted to a denial of his right to due process of law, which is guaranteed to him by the 14th Amendment to the Constitution. Appellant's Br. at 24. Appellant avers, "in essence, this claim is that this poor guy got the bum's rush." *Id.* at 25.

- 11 -

To support his claim, Appellant reiterates his arguments that the Agency failed to comply with Pa.O.C. Rule 14.2, that the Agency failed to perfect proper service on Appellant, and that Attorney Hendershot served as a GAL rather than an attorney. As explained above, all of these challenges are waived. Essentially, Appellant attempts to resurrect several waived claims of error into an overarching due process claim of error. Appellant fails to provide this Court with any relevant legal authority to support this broad claim. Accordingly, Appellant is not entitled to relief on this issue.

**E.**

In conclusion, Appellant's personal jurisdiction and due process claims of errors are waived. The record supports the trial court's conclusion that Appellant is incapacitated and in need of a plenary guardian of his person and estate. Accordingly, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2022

- 12 -